Kenneth J. THOMPSON, et al., Plaintiffs,

v.

Bernard L. KARR, et al., Defendants.

No. 1:96–CV–2060.

United States District Court,
N.D. Ohio,
Eastern Division.

April 27, 1998.

Joshua R. Cohen, Jonathan M. Yarger, Ellen M. Kramer, Kohrman, Jackson & Krantz, Cleveland, OH, for Plaintiff.

Walter R. Matchinga, Jeffrey Alan Schenk, Richard L. Warren, Jr., Quandt, Giffels, Buck & Rodgers, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION

GWIN, District Judge.

On January 20, 1998, Defendants Bernard L. Karr and the law firm of McDonald Hopkins Burke & Haber Co. filed a motion for summary judgment in this legal malpractice case [Doc. 99]. In moving for summary judgment, the defendants claim that the plaintiff cannot establish the elements of a legal malpractice action and that his claims are barred by the statute of limitations. For the reasons which follow, the Court grants the motion and dismisses this tort action.

### I

Defendants removed Plaintiff Kenneth J. Thompson's tort action from Cuyahoga County Common Pleas Court.[1] In the subsequent second amended complaint, Thompson added his status as trustee of two irrevocable trusts set up in 1987 and 1992 to the list of named plaintiffs. The four-count pleading seeks compensatory and punitive damages against Karr, a partner at McDonald Hopkins, who represented Thogus Products for 10 years. The defendant law firm represented the close corporation controlled by the Thompson family for approximately 20 years.

Count I claims Karr was negligent in advising the plaintiff on his ownership and employment interests in Thogus. Counts II and III claim Karr breached fiduciary duties while representing the plaintiff and Thogus. Count IV claims that the law firm is jointly and severally liable for damages Karr caused the plaintiff.

### II

Plaintiff Kenneth Thompson is the son of John P. Thompson. The latter founded Thogus in the 1950s. Thogus is a small family-owned company located in Avon Lake, Ohio.[2] John died on July 30, 1997. John's two children are Kenneth Thompson, and a daughter, Kathleen Hlavin. Hlavin is a shareholder in Thogus, and has worked at the company since 1974. She currently manages the company. On August 28, 1995, Plaintiff Kenneth Thompson was terminated as a Thogus employee for failure to perform his job. Plaintiff Thompson as an individual owns no stock in Thogus, but serves as trustee pursuant to Irrevocable Trust Agreements dated September 10, 1992 and December 29, 1987. These trusts own stock in Thogus.

John Thompson, then serving as president of Thogus and its majority shareholder, requested that his attorneys prepare the documents necessary to establish the 1987 and 1992 trusts. John Thompson was settlor for both trusts established with his property. Neither of the trusts was prepared for Plaintiff Kenneth Thompson nor at his direction. Similarly in 1992, John Thompson requested Karr to prepare a Sale of Stock Agreement. Under that agreement, Kenneth Thompson,

---

1. The case was removed on the basis of diversity and pursuant to 28 U.S.C. §§ 1441 and 1446. At the time of removal plaintiff was a South Carolina resident, but he is now domiciled in North Carolina, according to the second amended complaint. Both defendants are Ohio residents. They conceded for removal purposes that plaintiff could recover more than $50,000 in damages, the then amount-in-controversy for purposes of the diversity statute, 28 U.S.C. § 1332.

2. Thogus, a small, closely-held corporation, has five shareholders: John Thompson, Kathleen Hlavin, a trust of which Kathleen Hlavin is the trustee and beneficiary, and two trusts of which Kenneth Thompson is the trustee and beneficiary. Although John Thompson was a Thogus shareholder at all times pertinent to this case, his shares passed to his wife, Helen Thompson, at John Thompson's July 30, 1997, death.

as trustee, purchased some Thogus stock from his father. The payments are to be made pursuant to a promissory note Kenneth Thompson signed in his capacity as trustee.

The 1992 trust acquired its stock in Thogus under a Sale of Stock Agreement. Pursuant to the Sale of Stock Agreement, the 1992 trust purchased 2,500 shares of Thogus from John Thompson for $212 per share, for a total purchase price of $530,000. In connection with its purchase of Thogus stock, Kenneth Thompson, as trustee, executed a promissory note in favor of his father in the principal amount of $530,000. The note calls for Kenneth Thompson to repay the principal in nine annual installments with interest at 6 percent per year.

At the time the promissory note was prepared, Thogus paid its corporate income to its shareholders primarily in the form of bonuses. Kenneth Thompson never actually received the funds in question. They automatically were redirected to John.

McDonald Hopkins employed Karr as an attorney since 1978. Karr did estate planning work for members of the Thompson family, including Kenneth Thompson and his wife, Kenneth Thompson's sister, and Kenneth Thompson's parents. Karr and the firm performed some limited basic estate planning services for Kenneth Thompson and his wife commencing from November 1992 through 1993. Defendants prepared basic wills and related trust documents. Defendants finished the estate planning in 1993. From February through July 1994, defendants did limited services related to the buy out of a shareholder in Destination Travel, a travel agency in which Kenneth Thompson held an interest.

Since 1991, Kenneth Thompson had been in charge of sales and marketing for Thogus. At a meeting on August 2, 1995, Hlavin told Kenneth Thompson that she was dissatisfied with Kenneth Thompson's performance at the company and that this issue had to be resolved. At this meeting, Karr suggested to the plaintiff that he contact an attorney to protect his interests. On August 3, 1995, Kenneth Thompson spoke with an attorney

for the purpose of retaining him for legal representation. On August 28, 1995, Thogus terminated Plaintiff Thompson as an officer and employee.[3]

After being fired, Kenneth Thompson filed a lawsuit against his father, Thogus, Kathleen Hlavin, and the company accountant in Cuyahoga County Common Pleas Court. His father filed suit against Kenneth Thompson for nonpayment of a loan. The result in one of the state actions was a judgment in Kenneth Thompson's favor for $750,000.

### III

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the nonmoving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 255 (6th Cir.1998).

### IV

A plaintiff must prove three elements to establish a legal malpractice claim under Ohio law: "(1) an attorney-client relationship giving rise to a duty, (2) a breach of that

---

3. Defendants say that from time to time his father terminated Kenneth Thompson's employ-ment for the plaintiff's failure to adequately perform his job.

duty, and (3) damages proximately caused by the breach." *Krahn v. Kinney,* 43 Ohio St.3d 103, 105, 538 N.E.2d 1058 (1989) (citations omitted).

Plaintiff's claims are based upon allegations that Karr represented the plaintiff in connection with Kenneth Thompson's employment at Thogus and represented Kenneth Thompson, as trustee, in connection with Karr's preparation of the 1987 and 1992 Irrevocable Trust Agreements and the September 1992 Sale of Stock Agreement and the related promissory note.

Defendants argue that there was no attorney-client relationship between the parties regarding Kenneth Thompson's ownership or employment interest in Thogus. They represented Kenneth Thompson only in connection with his estate planning and some limited services provided in connection with a travel agency not related to this lawsuit. From November 21, 1992 through 1993, defendants rendered services in connection with preparing wills and related documents for Kenneth Thompson and his spouse. Thogus paid for Karr's preparation of Kenneth Thompson's estate planning documents. From February through July 1994, defendants also rendered limited corporate services in connection with a travel agency in which the plaintiff held an interest. The estate planning services concluded in 1993 and the corporate services concluded by July 1994.

However, testimony in the record demonstrates that no attorney-client relationship existed between these parties in relation to the matters complained of. All of these documents were prepared at the request of plaintiff's father as part of defendants' representation of John Thompson and Thogus. None of these documents was prepared at Kenneth Thompson's request, nor did Karr advise the plaintiff on these matters. Kenneth Thompson admitted that his father probably presented the documents to him after Karr already had prepared them for his father. The plaintiff agrees Karr did not consult with him concerning the documents, and that Karr was not present at the time John Thompson presented the documents to his son. Similarly, Kenneth Thompson admitted that Karr had suggested to him before his termination, that he contact an attorney to protect his interests. The plaintiff promptly did so.

Additionally, plaintiff has produced no evidence that his father ever would have agreed to relieve Kenneth Thompson of any obligation to pay for the stock should Thompson leave Thogus. That apparently is the benefit Kenneth Thompson alleges he was denied when the defendants did not urge him to retain legal counsel to represent his interests as trustee. However, the plaintiff's father was the decision maker behind the September 1992 Thogus stock transactions. John Thompson was the settlor of the 1987 and the 1992 trusts. It is clear that the defendants were providing legal representation to the controlling interests at Thogus, and that the defendants were not representing the interests of the beneficiary in those two trusts. Even if the facts were construed to show that Defendant Karr or the defendant firm was representing Kenneth Thompson as trust beneficiary, the plaintiff has not shown how another law firm's representation would have changed his father's mind. The plaintiff cannot show proximate cause or damages.

The Court finds that an attorney-client relationship between Kenneth Thompson and the defendants only arose on those occasions where Kenneth Thompson was the decision maker, i.e., estate planning services and the buy out of the travel agency shareholder. While summary judgment is appropriate on this ground alone, the Court also finds that the plaintiff has more serious problems with his case.

A malpractice plaintiff must meet his burden of proof with expert testimony that the defendant attorney fell below the applicable standard of care ordinarily exercised by members of the legal profession under similar circumstances, and that the attorney's breach of duty proximately caused damages to the plaintiff. *Landis v. Hunt,* 80 Ohio App.3d 662, 668, 610 N.E.2d 554 (10 Dist. 1992). Where a malpractice plaintiff fails to meet this burden of proof, summary judgment may be rendered in favor of the defendant attorney. *Id; see Gibbons v. Price,* 33 Ohio App.3d 4, 514 N.E.2d 127 (8 Dist.1986).

■ Plaintiff submitted his expert report in the form of a letter dated July 31, 1997 from Paul L. Millet, a Cleveland attorney. Review of the report shows that it fails to provide sufficient evidence supporting plaintiff's claims. The report does not mention the duties Kenneth Thompson says defendants allegedly owed to the plaintiff. Millet's report contains no opinions supporting Kenneth Thompson's claims that Karr failed to provide adequate safeguards to fund the trusts' purchase of stock if Kenneth Thompson's job ended and, that Karr negligently advised the plaintiff in connection with the potential sale of the trusts' shares in Thogus and the termination of Kenneth Thompson's job.

Millet's report opines that defendants owed a duty to inform the plaintiff of the advisability of retaining his own independent legal counsel in September 1992, when the Sale of Stock Agreement and promissory note were executed. The report says the defendants also could have obtained an informed waiver and consent on the alleged multiple representation. Millet bases this opinion upon his assumption that during the time period in question, defendants were providing legal services for the plaintiff as well as Thogus and plaintiffs father.

The report does not render any opinion that defendants had a duty to provide safeguards for plaintiff's stock purchase in the event Kenneth Thompson's employment was terminated or that defendants negligently advised the plaintiff in connection with his employment. Also, the report does not render any opinion that defendants' breach of these alleged duties caused any damages. Proximate cause and damages are not addressed in the report.

Any alleged failure to adequately represent the plaintiff in connection with Kenneth Thompson's ownership interests in Thogus fails due to the fact that plaintiff received sufficient compensation from Thogus to pay for the stock. Thogus paid Kenneth Thompson $751,000 in 1993 and $688,000 in 1994. Plaintiff had income to pay on the promissory note.

The plaintiff indeed has failed to meet his burden of proving breach of duties and damages with expert testimony. Defendants are entitled to summary judgment on Count I.

V

Counts II and III allege that Karr breached fiduciary duties. The gist of this section of the amended complaint consists of plaintiff's claims of professional negligence against Karr. Despite plaintiff's attempt to characterize the underlying claim for legal malpractice as a breach of fiduciary duty, Counts II and III sound in legal malpractice. It makes no difference whether the professional claim is based on tort or contract. *Erickson v. Misny,* No. 69213, 1996 WL 239883, at *7 (Ohio App. 8th Dist. May 9, 1996), *appeal denied,* 77 Ohio St.3d 1480, 673 N.E.2d 142 (1996).

■ In Counts II and III plaintiff says that Karr owed a duty to the plaintiff because Karr was legal counsel for Thogus. Plaintiff characterizes the alleged duties Karr owed Kenneth Thompson as "fiduciary duties," and further alleges that Karr breached these duties.

The claim that Karr, as counsel for the closely-held corporation, thereby owed a fiduciary duty to plaintiff, as a minority shareholder in Thogus, is based upon *Arpadi v. First MSP Corp.,* 68 Ohio St.3d 453, 458, 628 N.E.2d 1335 (1994). The plaintiff contends that under *Arpadi,* an attorney retained by a fiduciary owes a fiduciary duty to those in privity with the fiduciary regarding matters to which the fiduciary duty relates. The plaintiff contends that because shareholders of closely-held corporations owe a fiduciary duty to each other under *Crosby v. Beam,* 47 Ohio St.3d 105, 108–09, 548 N.E.2d 217 (1989), then the fiduciary duty which the defendants owed Thogus and its controlling shareholders also extended to the plaintiff.

The Court declines the plaintiff's invitation to extend *Arpadi* in this fashion. That case held that an attorney retained by a general partner to act as counsel for a limited partnership owes a duty of due care, not a fiduciary duty, to the limited partners regarding matters of concern to the partnership. *Arpadi,* 68 Ohio St.3d at 458, 628 N.E.2d 1335. *Arpadi* does not hold that an attorney re-

tained by a corporation or its majority shareholder thereby owes a fiduciary duty to a minority shareholder in that corporation.

Note too that *Arpadi* expressly distinguished between a partnership and a corporation when determining to whom an attorney owes his allegiance. This Court sitting in a diversity matter cannot find that *Arpadi* imposes a fiduciary duty or a new duty of care on Karr.

Accordingly, defendants are entitled to summary judgment on Counts II and III.

### VI

Count IV states a claim against the law firm in its capacity as Karr's employer under a theory of vicarious liability. Judgment should be granted to the defendant law firm as well since the Court finds the firm's partner, Defendant Bernard Karr, entitled to summary judgment. *Moncol v. Bd. of Ed. of North Royalton School Dist.*, 55 Ohio St.2d 72, 77, 378 N.E.2d 155 (1978) (well-established rule that judgment in favor of servant on merits renders invalid any judgment against the master).

### VII

■ In Ohio there is a one-year statute of limitations for legal malpractice actions. The action accrues and the statute begins to run on the later of two possible dates: (1) when a *cognizable event* occurs where the client discovers, or should have discovered, that the injury is related to the attorney's act or omission and the client is put on notice of a need to pursue possible remedies against the lawyer, *or* (2) when the attorney-client *relationship* for the particular transaction or undertaking at issue in the putative suit *terminates.* *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 58, 538 N.E.2d 398 (1989) (emphasis added); O.R.C. § 2305.11(A).

■ In determining when the cognizable event takes place, a plaintiff need not have

discovered all the relevant facts necessary to file a malpractice claim in order to trigger the statute of limitations. Instead, the cognizable event itself puts the plaintiff on notice to investigate the facts and circumstances relevant to any malpractice claim. It is sufficient if plaintiff has only constructive knowledge of facts, rather than actual knowledge of their legal significance, in order to start the statute of limitations running. *See Flowers v. Walker*, 63 Ohio St.3d 546, 549–551, 589 N.E.2d 1284 (1992) (cognizable event discussed in medical malpractice case).

■ Defendants claim that September 10, 1992, is the "cognizable event." That is when Thogus shareholders executed the Sale of Stock Agreement, the promissory note and the 1992 trust agreement. Since the plaintiff did not file his complaint in this litigation until August 19, 1996, the suit would fall outside the one-year statute of limitations. Plaintiff claims the relevant date is when he was fired on August 28, 1995 (and thus knew the 1992 stock sale would be unworkable) or when Defendant Karr sent him a letter on September 5, 1995 in which Karr told the plaintiff he could no longer "act as attorney for you individually." Either of those two dates would place the lawsuit within the statute of limitations.

The Court does not find plaintiff's submission of Karr's September 1995 letter entirely persuasive, but it has the potential of raising a genuine material factual issue on the applicability of the statute of limitations in this litigation. The plaintiff is suing Karr based on Plaintiff Thompson's position as a trustee and in his individual capacity. The Court considers that a broad reading of the second amended complaint could implicate Karr's legal services related to the plaintiff's estate. Also, sending the letter could qualify as the rupture of the attorney-client relationship that the Ohio rule requires. For all these reasons, the Court finds that it cannot enter judgment based on the statute of limitations argument.[4]

---

4. The Court finds little merit too in the defendants' claim that Thompson's second amended complaint changes the applicable statute of limitations because claims of the two new plaintiffs do not relate back to the original complaint.

This Court has held that amendments to pleadings pursuant to Fed.R.Civ.P. 15(c) may relate back to the date of the original pleading when the claims arose out of the conduct, transaction, or occurrence set forth or attempted to be set

## VIII

The plaintiff can make no showing that the defendants breached any duty of care or proximately caused the damages Kenneth Thompson alleges he suffered as a result of legal malpractice. The Court grants Defendants Karr and the McDonald Hopkins firm summary judgment.

IT IS SO ORDERED.

forth in the original pleading. *Warpar Mfg. Corp. v. Ashland Oil, Inc.,* 102 F.R.D. 749, 750 (N.D.Ohio 1983). Here, Thompson naming himself in his capacity as trustee of the two irrevocable trusts at issue in the lawsuit strikes the Court more as a formality than a necessity and the two new parties are the same person as the original plaintiff. *But see Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir.) (Sixth Circuit precedent clearly holds new parties may not be added after statute of limitations has run) (substituting named defendants for "John Does" was change in parties and did not relate back to original complaint), *cert. denied,* —— U.S. ——, 117 S.Ct. 78, 136 L.Ed.2d 37 (1996).