**Larry BURTON, Plaintiff,**

v.

**Eugene I. SELKER, Mark Selker, Phillip C. Furber, and Selker & Furber, Defendants.**

No. 1:98–CV–289.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 24, 1999.

Edward R. La Rue, Yelsky & Lonardo, Cleveland, OH, Dean Browning Webb, Vancouver, WA, for Larry Burton.

George S. Coakley, John P. O'Neil, Reminger & Reminger, Cleveland, OH, Eugene I. Selker, Sr., Selker & Furber, Cleveland, OH, Timothy A. Shimko, Sr., James Spyros Gemelas, Shimko & Associates, Cleveland, OH, Larry E. Parrish, Parrish, Shaw &

Brandon, Memphis, TN, John J. MulRooney, Crone & Mason, Memphis, TN, for Eugene I. Selker, Phillip C. Furber, Selker & Furber.

George S. Coakley, John P. O'Neil, Reminger & Reminger, Cleveland, OH, Eugene I. Selker, Sr., Selker & Furber, Cleveland, OH, Timothy A. Shimko, Sr., James Spyros Gemelas, Shimko & Associates, Cleveland, OH, Dante Marrazzo, North Olmsted, OH, Larry E. Parrish, Parrish, Shaw & Brandon, Memphis, TN, John J. MulRooney, Crone & Mason, Memphis, TN, for Mark Selker.

Kathryn Lynn Sords Mercer, Cleveland, OH, for Kathryn L. Mercer, neutral.

## OPINION

GWIN, District Judge.

On December 28, 1998, Defendants Eugene Selker, Philip Furber, and the law firm Selker & Furber (collectively, "Defendant Selker") filed a motion for summary judgment in this action for legal malpractice, interference with business, and fraud [Doc. 123].[1] In deciding this motion, the Court must determine whether a genuine issue of material fact exists regarding Plaintiff Larry Burton's ("Burton") legal malpractice claim.

Because the Court finds that Plaintiff Burton fails to show sufficient evidence to support his legal malpractice claim, the Court grants the defendant's motion for summary judgment on this claim.

## I. FACTUAL BACKGROUND

This lawsuit stems from a complex series of transactions through which Plaintiff Larry Burton and Mark Selker, through the company XL Sports, Ltd. ("XL Sports") purchased an interest in the United States Wrestling Association ("USWA"). Defendant Selker represented both Burton and Mark Selker in the USWA purchase.

Sometime after purchasing USWA, the business failed and XL Sports declared bankruptcy. The bankruptcy action is pending in Tennessee.

The transactions to purchase USWA and the subsequent failure of the business spawned several lawsuits, three of which are before this Court.[2] Because of the complexity of the cases, the Court limits its discussion herein to Defendant Selker's motion for summary judgment in Case Number 1:98–CV–289. The facts that follow, though detailed, provide only the barest outline of the transaction and relationship of the parties. A more detailed discussion of the events at issue follows in the Court's discussion of disputed issues in Part III, *infra.*

In October 1996, Plaintiff Larry Burton moved from California to Memphis, Tennessee, to become general manager of USWA, then owned jointly by Jerry Lawler ("Lawler") and Warrior Sports, Inc., an entity owned and operated by Jerry Jarrett.

On October 22, 1996, Burton and Lawler entered an agreement under which USWA retained Burton's services to conduct all of USWA's merchandising operations. The agreement explicitly referenced Burton's intentions to enter an agreement with Mark Selker to manufacture and market products under the USWA name.

On the same day, Burton and Mark Selker entered a merchandising agreement. In that agreement, Mark Selker would produce t-shirts and other consumer products. Pursuant to the contract, Burton and Selker would also share net profits from product sales.

In executing the merchandising agreement, Plaintiff Burton was represented by attorney Elliott Pollack. Mark Selker was represented by his father, Eugene Selker, of the law firm Selker & Furber.

To facilitate Mark Selker's obligation under the merchandising agreement, Eugene Selker and Philip C. Furber of the firm Selker & Furber created Original Digital, Ltd. ("ODL"), a limited liability company. Eugene Selker held a 9.6% interest in the company and Mark Selker held a controlling interest of 58.5%. The remaining investors

---

**1.** Mark Selker, son of Eugene Selker, is also a defendant in this case. However, he is not subject to Plaintiff Burton's legal malpractice claim.

**2.** The three cases before the Court are *Burton v. Selker, et al.,* 1:98–CV–289, 1999 WL 111501; *Lawler v. Selker, et al.,* 1:98–CV–2028; and *XL Sports, Ltd. v. Burton, et al.,* 1:98–CV–2046.

are comprised of family members, friends, and business associates of Mark Selker. Burton says he was unaware of Eugene Selker's interest in ODL or that other individuals invested in ODL.

In early November 1996, Burton spoke with Lawler about purchasing his interest in USWA. Lawler was agreeable to selling the business. Ultimately, the price was agreed to be $2,000,000. Burton subsequently spoke with Vince McMahon, chief executive officer of the World Wrestling Federation ("WWF"). Burton says he asked whether McMahon would be interested in purchasing the USWA. McMahon responded that he estimated the value of USWA somewhere between $6,000,000 and $8,000,000.

Burton facilitated Lawler's purchase of Jarrett's half-interest in USWA for $250,000, thus making Lawler the sole owner of USWA. Burton received a 25% commission on this sale. Burton then set out to purchase USWA from Lawler, with the goal of turning around and selling USWA to McMahon for considerable profit.

Burton says he knew McMahon handled his own merchandising and that McMahon would not buy USWA if he could not acquire all rights, including merchandising rights, in USWA. To free USWA of all side agreements, Burton needed to remove Mark Selker as a party to the merchandising agreement.

Burton says he told Mark Selker about the potential deal with McMahon and offered to return Selker's down-payment on the contract. Selker refused.

Burton says Mark Selker, Eugene Selker, Philip Furber, and Selker & Furber then used the merchandising agreement as a wedge to force their way into Burton's plan to acquire USWA from Lawler and re-sell to McMahon. Burton says he faced two choices: either let Defendant Selker in on the deal or fail to purchase USWA from Lawler and thus lose credibility with Lawler.

Burton agreed to let Defendant Selker in on the acquisition of USWA. At this time,

Mark Selker was represented by Eugene Selker. Burton says Eugene Selker "reconfirmed and accentuated" Mark Selker's position. Burton also says he made it clear to defendant that he wanted to acquire USWA and quickly re-sell to McMahon. Burton says both Eugene and Mark Selker wanted to hold on to USWA for a longer period and re-sell for as much as three times more than McMahon's estimated purchase price.

Burton later told Mark Selker he needed legal representation in the USWA transaction. Burton agreed to have Eugene Selker represent him, even though Eugene Selker also represented Mark Selker.

Burton signed a letter waiving Eugene Selker's conflicts of interest. Although the letter is dated November 22, 1996, Burton claims he did not sign it until December 16, 1996, the date on which he faxed it to Selker & Furber.

On or about December 13, 1996, Plaintiff Burton and Mark Selker agreed to acquire USWA. On December 19, 1996, Mark Selker informed Burton he was organizing XL Sports, a limited liability company, to facilitate his purchase obligations under the acquisition agreement. Through XL Sports, Mark Selker recruited investors and raised enough money to purchase his half-interest in USWA.[3] Mark Selker, Eugene Selker, Philip Furber, and Selker & Furber each hold shares of XL Sports.

Upon purchasing USWA, Burton sought an authorization letter from Eugene Selker which he could bring to Vince McMahon to facilitate a sale of USWA to McMahon. Defendant Selker refused.

Ultimately, the business fell into bankruptcy. All parties involved in the transaction— Burton, Lawler, the Selkers, and XL Sports—are now involved in various lawsuits against each other, making claims ranging from fraud to racketeering.

In this case, Plaintiff Burton claims Defendant Selker engaged in legal malpractice. Plaintiff Burton claims Defendant Selker en-

---

**3.** XL Sports ultimately purchased 10% of Burton's half-interest, thus leaving XL Sports with a 55% share and Burton with 45%. For ease in discussion, the Court refers to each party's interest as a half-interest.

gaged in malpractice through self-dealing, favoritism towards Mark Selker which worked to Burton's detriment, failures to disclose, and multiple client representation without effective waiver of conflicts of interest.

Burton claims Eugene Selker, Philip Furber, and Selker & Furber engaged in malpractice because Burton was not informed about Eugene Selker's prior involvement in the merchandising agreement, the creation of ODL, or the fact that Eugene Selker represented both Mark Selker and ODL while also holding shares of ODL. Burton also says he was never informed Mark Selker could not finance the USWA purchase without the help of other investors and that Burton did not know about ownership interests held by defendants.

Burton claims Eugene Selker favored his own and Mark Selker's interests when he refused to provide Burton with an authorization letter with which to sell USWA to McMahon. Burton also alleges Defendant Selker failed to protect his ownership interest in USWA by failing to produce documents reflecting this interest. He claims loss of his half-interest as damages from defendant's malpractice.

On December 23, 1998, Defendant Selker filed a motion for summary judgment. Defendant argues there is no genuine issue of material fact supporting plaintiff Burton's claims of legal malpractice. For the reasons that follow, the Court agrees and grants Defendant Selker's motion on the legal malpractice claim.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987); *SEC v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp.*, 822 F.2d at 1435.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. *See id.* But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy*

*Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

The Court reviews Defendant Selker's motion and relevant portions of the record in light of this standard and concludes that Plaintiff Burton's legal malpractice claim must fail.

## III. ANALYSIS

■ Defendant Selker moves for summary judgment on Plaintiff Burton's legal malpractice claim.[4] To establish a legal malpractice claim under Ohio law, a plaintiff must prove an attorney-client relationship existed[5] which gave rise to a duty, a breach of that duty, and damages proximately caused by the breach. *Thompson v. Karr,* 4 F.Supp.2d 731, 733–34 (N.D.Ohio 1998) (citing *Krahn v. Kinney,* 43 Ohio St.3d 103, 105, 538 N.E.2d 1058 (1989)); *Vahila v. Hall,* 77 Ohio St.3d 421, 427, 674 N.E.2d 1164 (Ohio 1997).

In opposing the motion, Plaintiff Burton points to several events in course of his relationship with the Selkers that he says support the legal malpractice claim. After addressing each of Burton's points of contention, the Court finds there is no genuine issue of material fact remaining to support the legal malpractice claim.

4. Defendant Selker's motion is primarily addressed to the legal malpractice claim. The motion does not address Burton's fraud claim against the Selkers and addresses his interference with business claim only in passing.

In its brief discussion on the latter claim, Defendant Selker asserts it filed an earlier lawsuit against Burton in good faith and therefore "no tort action is stated" by Burton for interference with his business. Defendant points to cases which, though not directly on point, establish that under certain circumstances attorneys are immune from damages to third persons when acting in good faith on behalf of a client.

Apart from the fact that Defendant Selker avoids directly addressing the elements of Burton's claim by instead pointing to a defense, the Court notes the uncertainty of the evidence supporting defendant's argument.

Defendant Selker does not direct the Court to specific evidence in support of its argument that it did not interfere with Burton's business. Instead, defendant makes a general reference to "the facts previously discussed" in its brief supporting the motion. These facts illustrate Defen-

### A. Waiver of Conflicts of Interest

■ Plaintiff Burton asserts he was uninformed about the nature of Eugene Selker's relationship with Mark Selker and ODL at the time he engaged Eugene Selker to represent him in the USWA transaction. Burton claims the "evidence equally reveals the patent absence of express written waivers of conflicts of interest." Plaintiff is incorrect. Burton expressly waived conflicts of interest when he signed and returned via fax Eugene Selker's letter explaining the conflicts:

> This is to acknowledge your request to me to act as your attorney in your negotiations with Jerry Lawler, USWA. Your goal is to purchase the USWA business under an agreement providing for 25% interest and the remainder over time. You discussed this with me on the telephone in a joint conference with my son, Mark Selker. In that conversation I advised you that there was a conflict of interest in my representing you in your dealings with Jerry Lawler. The conflict of interest arises as a result of my prior representation and ongoing representation of my son, Mark, in his dealings with you and with USWA, and our interest in Mark's business. This relationship would preclude my representing you.

dant Selker's assertion that Burton defrauded the Selkers and investors in XL Sports.

Defendant is pursuing a counterclaim for fraud against Burton. However, Defendant Selker does not move for summary judgment on whether Burton defrauded the Selkers and XL Sports. Thus, Burton's alleged fraud remains in question.

Because defendant relies upon Burton's alleged fraud to justify its "good faith" defense for filing an earlier suit against Burton, and because defendant does not directly address the element of Burton's interference with business claim, the Court finds it inappropriate at this stage to grant summary judgment in the face of such an indirect challenge.

Therefore, the Court limits its discussion to the legal malpractice claim.

5. Defendant Selker argues that no attorney-client relationship was established between Plaintiff Burton and Eugene Selker or Selker & Furber due to Burton's fraud in engaging defendant to represent him. In this opinion, the Court assumes an attorney-client relationship existed, but finds that Burton fails to support the legal malpractice claim in any event.

However, after I explained this to you and I also explained to you if you and Mark both acknowledged my position and if you waived the conflict of interest, I would undertake the representation of your interests in dealing with Jerry Lawler. Even with your waiver, which you expressed, I still must reserve the right to withdraw if at any time I feel there is a potential or real conflict involving my continued work for both you and Mark. Furthermore, if either Mark or you desires that I cease such representation of you, it will terminate our relationship. Until that time, I will be pleased to represent you as counsel and to advise you and prepare such documents as you require in your efforts to purchase USWA.

\*    \*    \*    \*    \*    \*

Please acknowledge the attorney-client relationship and the waiver of conflict of interest by signing and returning to me a copy of this letter.

The letter is dated November 22, 1996. Burton claims he did not sign it until December 16, 1996, the day he returned the letter to Selker via fax.

Plaintiff Burton says Eugene Selker neglected to tell him that Mark Selker had formed Original Digital, Ltd. ("ODL") to facilitate the merchandising agreement. Eugene represented Mark in forming ODL and held an interest in ODL. Burton claims Eugene's omission left him uninformed about the attorney's conflict of interest at the time Burton engaged Eugene Selker to represent him in the USWA transaction.

Plaintiff Burton's claim that he was ignorant of the relationship between him and the Selkers is not supported by the evidence. The letter reflects Eugene Selker's disclosure of his "prior representation and ongoing representation of [his] son, Mark, in his dealings with [Burton] and the USWA, and [Selker & Furber's] interest in Mark's business." At the time the letter was written—and certainly by the date Burton claims

he signed it—the only "prior" business Eugene represented Mark Selker in relative to USWA was the t-shirt merchandising agreement.

Burton admits that Eugene Selker created the merchandising agreement. Yet Burton complains that the waiver letter "does not refer to the attorneys' prior involvement in connection with the [merchandising] agreement." Burton's claim that he did not understand Eugene Selker's position relative to Mark Selker is not persuasive.

Plaintiff Burton also suggests that Eugene Selker operated against Burton's interests when establishing ODL for Mark Selker. Burton complains that ODL's "operating agreement reveals that Burton was not a member shareholder of Original Digital, Ltd., contrary to the terms and conditions of the [merchandising] agreement." Burton does not point to which term he believes was breached.[6] Upon this Court's reading, the only relevant provision of the merchandising agreement states:

> 3. Each party, without the approval of the other, shall have the right to transfer his rights and obligations under this agreement to an entity in which he has at least a 51% ownership (or beneficial) interest, or in which he is a principal investor and an operating officer.

Mark Selker created ODL and holds a 58.5% interest in the business.

The agreement indicates both parties' intent to allow each other to handle their interests independently, without oversight by the other party. The agreement reflects the parties' foresight that one or both of them would do exactly what Mark Selker did: transfer his interest to another business entity while retaining a substantial role in handling the asset. Plaintiff Burtons' claimed dismay at Mark Selker's exercising his contractual rights is disingenuous.

More important, Plaintiff Burton offers no evidence of damages stemming from ODL's

---

**6.** Plaintiff Burton does suggest his status as a co-equal owner and equity participant with Mark Selker in the merchandising venture was threatened by ODL's existence and/or Eugene Selker's ownership interest in ODL. However, as ex-

plained in the Court's discussion, there is no evidence that Burton's interest in the merchandising arrangement was harmed by the creation of ODL to handle Mark Selker's individual interest.

creation. Burton does not allege that he was cheated out of his interest in the merchandising deal, which would grow from 35% of net profits during the first year to 50% of net profits after two years. He only complains that Mark Selker would not let him out of the contract so that he could offer McMahon the entire USWA assets, free from extraneous merchandising agreements:

In mid November, 1996, Burton contacted Mark Selker and offered to return to him the monies that he had previously contributed to the t-shirt deal. Burton noticed that Selker had not advanced the merchandising activities and believed that since Selker was not taking an active stance, it was reasonable to return Selker's money. Selker refused. Burton, thinking Selker was a friend and would understand and appreciate why Burton would want to end that contractual relationship with him, told him about his potential transaction with McMahon. Burton knew that McMahon did his own merchandising of t-shirts, and that there would be no reason for the merchandising agreement between Burton and Mark Selker. Again, Selker refused and told him he wanted "in on the deal."

Plaintiff Burton also complains that Defendant Selker knew Burton would never be able to close a deal with McMahon to sell USWA as long as the merchandising agreement between Burton and Mark Selker remained in place. Burton says Defendant Selker was negligent for refusing to release him from the contract with Mark Selker despite knowing Burton's desire to buy out Mark's interest.

Burton does not show a breach of duty by defendant, let alone damages proximately resulting from one. That Burton was unable to get out of the contract with Mark Selker does not show negligence by Eugene Selker but rather a lack of foresight by Burton.

In entering the merchandising agreement, Burton was represented by Elliott Pollack. Eugene Selker represented Mark Selker. There was no conflict of interest at that stage. Mark Selker's later refusal to let Burton out of the merchandising agreement was within his rights. If Burton was correct that McMahon would not consider purchasing USWA unless all side agreements were dissolved, any losses he suffered from being held to the merchandising contract with Mark Selker were self-induced and not the proximate cause of Mark Selker's desire to enforce the contract.

Plaintiff Burton next asserts that Defendant Selker used the refusal as a wedge to pressure Burton to include Defendant Selker in the effort to acquire USWA. Burton states he felt pressure from the Selkers and reluctantly assented to the Selkers' demands of wanting in on the deal to purchase USWA.

Burton told Mark Selker he needed counsel to represent him in the USWA acquisition. But no one forced him to be represented by Eugene Selker in this transaction. Burton offers no explanation why he did not choose Elliott Pollack to represent him in the USWA purchase. This observation is not to minimize any duty Eugene Selker, Philip Furber, or Selker & Furber had to represent both Burton's and Mark Selker's interests in the USWA transaction. It does point out, however, that Burton was not an unsophisticated user of legal services, at the mercy of the Selkers for legal representation.

Despite his alleged discomfort with the Selkers and his knowledge of Eugene Selker's representation of Mark Selker's interests, Plaintiff Burton engaged Selker & Furber to represent him and waived any conflicts of interest. The waiver letter explicitly referred to "our [Selker & Furber's] interest in Mark's business," which at the time consisted of the t-shirt deal and the pending purchase of USWA. In addition, under the waiver letter Burton could have terminated the relationship at any time for any reason.

Essentially, Plaintiff Burton says the waiver letter is not effective because it does not contain every detail of the prior and anticipated relationship between him and the Selkers. Such detail is not necessary, especially when the surrounding facts provide context. The facts demonstrate that Burton was informed of certain existing and potential conflicts posed by Selker & Furber's representation at the time he signed the waiver letter.

In light of the evidence, Plaintiff Burton's assertion that he was uninformed about Defendant Selker's interests or was hostage to defendant's conduct must fail. Similarly, his assertion of a lack of effective waiver of conflict of interest fails.

### B. Failure to Provide Authorization Letter

Plaintiff Burton claims Eugene Selker failed to provide him with a letter with which he would approach Vince McMahon, who Burton claims was interested in purchasing USWA for between six and eight million dollars. Burton describes the pertinent conversation with McMahon in the following way:

> In early November, 1996, Burton approached Jerry Lawler and inquired about acquiring all of his right, title, and interest in USWA. Lawler told Burton that anything was for sale, and to get back to him (Lawler) with a number. Subsequent to that conversation with Lawler, Burton, in early November, 1996, had a conversation with Vince McMahon, chief executive officer of the World Wrestling Federation ["WWF"], inquiring if McMahon would be interested in acquiring the USWA properties. During that discussion, McMahon told Burton that he knew of USWA's track record as a profitable business being properly managed and operated by Jerry Lawler, and that in McMahon's opinion, based on his observation of USWA's activities and profitability, USWA was worth between $6,000,000 and $8,000,000.

Burton says McMahon handled his own merchandising and presumably would not be interested in purchasing USWA if side agreements with third parties existed. Thus, Burton believed the merchandising agreement between him and Mark Selker stood in the way of any future sale to McMahon. Burton says he asked Mark Selker to let him out of the merchandising contract but that Selker refused because he wanted in on any deal with McMahon.

██ However, beyond Burton's assertion, there is no evidence that McMahon ever expressed interest in purchasing USWA. Plaintiff Burton has not provided even an affidavit by himself or McMahon to support this assertion. The Court is left with Burton's characterizations of his dealings with McMahon.

Fed.R.Civ.P. 56(e) provides, in part:

> (e) Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

McMahon's statement is hearsay, and not admissible. Under Fed.R.Evid. 801, "[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, Burton seeks to offer evidence of McMahon's out of court statement to prove the truth of the statement.

Even if the Court disregarded that Burton's evidence is hearsay, there is no indication that McMahon expressed any interest in purchasing USWA during the alleged conversation, only that he offered his opinion of USWA's value. Burton refers to a future sale to McMahon as a "potential transaction." This is merely an allegation that Plaintiff Burton was interested in making a deal with McMahon, not that McMahon had any interest, let alone intention, of entering a deal with Burton.

Therefore, any damages Plaintiff Burton may have suffered as a result of Eugene Selker's refusal to provide the authorization letter are not supported by admissible evidence, are speculative, and are insufficient to show legal malpractice.

## C.  Favoritism

Defendant Selker's failure to provide Burton with the authorization letter with which he could approach McMahon is the subject of another allegation by Burton: that Defendant Selker favored Mark Selker, ODL, and XL Sports to Burton's detriment.

Burton says Defendant Selker's failure to provide the authorization letter favored Mark Selker's continued ownership interest in USWA while harming Burton's interest in selling. In addition, Burton claims he lost his half-interest in USWA because certain documents do not reflect his ownership status. The Court addresses each issue in turn and finds them insufficient to support the malpractice claim.

As a preliminary matter, the Court notes that Plaintiff Burton does not point to any evidence supporting his claims he approached Selker & Furber for an authorization letter and no evidence that his request was rejected. Plaintiff Burton does not offer an affidavit in support of his position. His assertions are contained in his brief in opposition and an expert witness report summation of facts. Burton shows no evidence to support this claim. Fed.R.Civ.P. 56(e).

However, even assuming Burton's allegation to be true, defendant's refusal to provide the letter does not support Plaintiff Burton's malpractice claim. Even if Defendant Selker's representation of Mark Selker's interest in holding onto USWA harmed Plaintiff Burton's interests, Burton waived the conflict of interest in the engagement letter with Eugene Selker.

In mid-November 1996, Burton expressed to the Selkers his interest in acquiring and quickly re-selling USWA. Burton says during that conversation Eugene and Mark Selker made it clear they anticipated holding on to USWA for a longer period and then selling the business for more than the $6 to $8 million Vince McMahon might offer. Burton says he signed the letter waiving defendant's conflicts of interest on December 16, 1996, fully one month after learning he and the Selkers were at cross-purposes regarding future sale of the business.

Plaintiff Burton cannot now argue to be released from his waiver. In light of the evidence, Defendant's failure to provide the authorization letter does not support a claim of malpractice.

Plaintiff Burton also claims Defendant Selker neglected to protect his interests because Burton's ownership interest in the USWA assets is not reflected in certain documents. Specifically, Plaintiff Burton points to a letter from Eugene Selker to Union Planters Bank of Memphis, Tennessee. In this letter, Eugene Selker explains that Burton would merge his interest in USWA with XL Sports's interest, leaving XL Sports the sole title owner. Burton also points to the Bill of Sale, which transfers all USWA assets to XL Sports.

Burton says he never agreed that title would be held by XL Sports. Defendant Selker offers no evidence of an agreement among the parties for XL Sports to hold title.

Burton claims that Selker & Furber "consistently told" Burton that the firm would produce documents reflecting his joint ownership of USWA. Burton asserts that failure to produce documentation and the absence of language in the Bill of Sale protecting his interest in USWA is evidence of malpractice. Burton claims as damages the loss of his interest in USWA.

Although it is unclear whether Plaintiff Burton and Defendant Selker agreed to hold title to USWA solely in the name of XL Sports, there is no evidence that Burton lost his interest in USWA. The letter from Eugene Selker to Union Planters Bank clearly identifies Burton as a co-purchaser. The Receipt of Sale identifies Burton as a co-payor.

Further, Defendant Selker does not challenge Plaintiff Burton's interest in the business. In fact, it is central to defendant's complaint that Burton has obtained a half-interest in USWA without paying anything for it.[7] Therefore, there is no evidence that

---

**7.** Defendant Selker alleges Plaintiff Burton and Jerry Lawler defrauded XL Sports' investors into paying for their half interest in USWA while

Burton paid no money for his interest. Defendant Selker argues Lawler misrepresented that he had been paid in full for the USWA assets

any alleged negligence by Defendant Selker damaged Plaintiff Burton.

Burton has failed to show damages flowing from defendant's alleged failure to protect Burton's ownership interest. Burton also understood he and Mark Selker—and by extension Eugene Selker, Philip Furber, and Selker & Furber—were at cross-purposes regarding a future sale of USWA before he signed the waiver letter. Therefore, the Court finds Burton does not show material facts supporting a malpractice claim.

### D. Self–Dealing

Plaintiff Burton asserts he did not know until September 1997 that Eugene Selker, Philip Furber, and the law firm Selker & Furber held ownership interests in both ODL and XL Sports. Burton also says he was not aware until then that other individuals were investing in XL Sports as a means of raising money for Mark Selker's purchase of half of USWA. Burton says defendant's failure to inform him was negligent and that he would have sought other legal counsel had he known of the defendant's "self dealing." Burton's argument fails for several reasons.

First, as explained already, Burton knew before signing the waiver letter of Eugene Selker's interest in Mark's business.

Second, Burton's claim he was uninformed of Eugene Selker's interest in XL Sports until September 1997 is contradicted by Burton's declaration at an earlier stage in this case.[8] This declaration indicates that at the same time he engaged Eugene Selker to represent him, Burton was aware of various parties' relationship to the USWA transaction:

> I retained Selker and his firm sometime in mid December, 1996.... During this time ... I spoke with these lawyers, Mark Selk-

er, and other individuals who were involved in the funding of XL Sports, Ltd.

\* \* \* \* \* \*

> I did come to Cleveland, Ohio, in early 1997 ... to meet with Douglas Smorag. Smorag was one of the capital contributors to XL.

Thus, the evidence casts doubt upon Burton's claim that he did not learn about XL Sports' investors until September 1997.

■ Even if Defendant Selker failed a duty to fully inform Burton of the nature of its interests, a malpractice claim requires that Burton show not simply a breach but also damages resulting from the breach. "Before legal malpractice can occur, the client must have incurred damages which were directly and proximately caused by the attorney's malpractice." *Northwestern Life Ins. Co. v. Rogers,* 61 Ohio App.3d 506, 512, 573 N.E.2d 159 (Ohio App. 10th Dist.1989).

Plaintiff Burton fails to show damages resulting from any breach by Defendant Selker. First, as explained earlier in this opinion, Burton did not lose any of his ownership interest in ODL; he was merely hindered from offering USWA to McMahon because he had entered a merchandising agreement of his own volition.

Second, Burton admits he had only two choices relative to USWA: let the Selkers join him as co-partners to buy USWA, or fail to buy USWA and thereby lose face with Lawler. Thus, by working with the Selkers Burton did not lose anything; rather, he gained a half interest in the business he admits he would not otherwise have had.

The Court notes the parties' arguments and supporting evidence relate solely to events surrounding the acquisition of USWA.[9] The parties do not point to evidence

---

when in fact Burton has paid no money for his interest in USWA. Burton has also allegedly received approximately $450,000 of the $1.1 million XL Sports investors paid for its half interest.

In short, Defendant Selker alleges Burton concealed his inability to pay cash for USWA and his sharing in XL Sports's payments to Lawler.

8. Earlier in this case, Defendant Selker moved to stay the proceedings pending the outcome of similar cases pending in Tennessee. Burton's

declaration was offered in opposition. *See* Doc. 22.

9. Plaintiff Burton filed a request for judicial notice simultaneously with his brief in opposition to the motion for summary judgment. Burton requested this Court to take notice of a brief and attached exhibits which were filed in XL Sports's bankruptcy case, currently pending in Tennessee.

Rule 201 of the Federal Rules of Evidence allow this Court to take judicial notice of adjudi-

**994**

explaining USWA's demise after it was acquired by Burton and Mark Selker/XL Sports.[10] Because neither party provides details regarding how the business failed, the Court cannot assume losses associated with USWA's failure were proximately caused by any alleged wrongful conduct by Defendant Selker.

## IV. CONCLUSION

For the reasons provided herein, the Court grants Defendant Selker's motion for summary judgment on Plaintiff Burton's legal malpractice claim.

IT IS SO ORDERED.

cative facts which are readily known within this Court's territorial jurisdiction or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Ev. 201(a), (b).

Even if this Court were to take notice that Burton filed this document in the Tennessee case, the relevance of the document to this case is not apparent. Burton refers to the document as being "in support of the response to the summary judgment motion" in this case. There is no further reference to the document in Burton's brief in opposition or in its expert witness report. Burton fails to direct the Court to specific provisions of the document that may be relevant to this case. Burton also fails to explain which relevant portions of that document and its sup-

porting exhibits have not already been provided in its expert witness report in *this* case.

The brief in the Tennessee case covers the topic of "reasonably equivalent value," "transfer," and "insolvency" under the bankruptcy code. Considering the topic and the absence of any guidance from Burton regarding how the document should apply to the Court's analysis of defendant's motion, the Court will not search for meaning in the document or its supporting exhibits.

**10.** Plaintiff Burton does allege Defendant Selker filed suit against him in order to force him out of USWA. Burton's interference with business claim, however, is not at issue in this opinion.