DUCKTOWN SULPHUR, COPPER & IRON CO., LIMITED,
*v.* FAIN *et al.*

(*Knoxville.*    September Term, 1902.)

1. **DISCOVERY, COURTS OF LAW.** Power ample to compel discovery in respect to suits pending therein.

   In this State it is well settled that either party to an action at law is entitled to a discovery from the other party of any matters material to the issue of such suit, in all cases where the same party would, by the rules of equity, be entitled to a discovery in aid of such suit; and the remedy provided and power conferred upon courts of law to compel such discovery is complete and adequate. (*Post, p.* 62.)

   Code construed:  Sec. 5684 (S); sec. 4549 (M. & V.); 3891 (T. & S.)

   Case cited:  Bumpass *v.* Reams, 1 Sneed, 598.

2. **EQUITY.** Injunction. Multiplicity of suits.

   Courts of equity will not entertain a bill to enjoin a multiplicity of suits upon the ground merely that there is a "community of interest in the questions of law and fact involved;" to warrant such a bill there must be some recognized ground of equitable cognizance, or some community of interest in the subject-matter of the controversy, or a common right or title involved, or there must be some common purpose of pursuit of a single adversary, where each may resort to equity to be joined in one suit. (*Post, p.* 63.)

   Case cited and approved:  Tribette *v.* Railroad, 70 Miss., 182.

3. **EQUITY.** Jurisdiction. Unliquidated damages.

   A court of equity has never had jurisdiction to assess unliquidated damages and the Act of 1877 (chapter 97) enlarging the jurisdiction of chancery courts in this State expressly ex-

Ducktown Sulphur, Copper & Iron Co. v. Fain.

cepts cases of unliquidated damages for injuries to persons, property and character. (*Post, pp.* 64-65.)

Code construed: Section 6109 (S.); 5043 (M. & V.)

4. **EQUITY. Discovery. Multiplicity of suits. Injunction. Case in judgment.**

Complainant filed its bill against twenty-one parties as defendants to enjoin their separate actions at law against complainant to recover damages for alleged injuries to their property from sulphurous smoke and noxious vapors emitted from the sulphur and copper plant of complainant. Said bill alleged that all the defendants had entered into champertous agreements with their attorneys to prosecute their separate suits against complainant for injuries to their land on the ground that complainant's aforesaid plant was a nuisance; that defendants had unlawfully combined and agreed to bring their separate suits, instituted about the same time, to vex and harass complainant with a multiplicity of suits, but that the particular terms and provisions of said agreement were unknown to complainant, and it had no means of discovering the same except from the parties themselves. Injunction and discovery prayed. Demurrer by defendants.

HELD: 1st. Complainant not entitled to discovery, its remedy, in the actions at law, being adequate and complete. 2d. There was no such community of interest in the subject-matter, or common right or title involved as would warrant an injunction to prevent a multiplicity of suits. 3d. That the averments in respect to the unlawful combination charged, properly construed, were intended as a basis for the discovery prayed and were insufficient to authorize an injunction. *Post, pp.* 58-66.)

---

FROM POLK.

---

Appeal from the Chancery Court of Polk County. T. M. MCCONNELL, Chancellor.

JAMES G. PARKS and MAYFIELD & SON, for Duck-town Sulphur, Copper & Iron Co., Limited.

W. A. GUINN, B. B. C. WITT and INGERSOLL & PEYTON, for Fain *et al.*

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The object of this bill was to enjoin the defendants from prosecuting separate suits against the complainant corporation to recover damages alleged to have been inflicted upon their property by the sulphurous smoke and noxious vapors emitted from the works of complainant. Demurrers to the bill were overruled by the chancellor, and defendants permitted to appeal. The court of chancery appeals reversed the decree of the chancellor, sustained the demurrers, and dismissed the bill. The cause is before this court on the appeal of the complainant from the decree of the court of chancery appeals.

The material allegations of the bill are that there are now pending against complainant in the circuit court, 21 separate suits brought by the defendants, and the amount of damages sought to be recovered aggregates over $42,000; that the gravamen of said suits is the alleged injury to timber standing on the respective tracts of land of defendants, alleged to have been caused by the smoke and gases emitted from complainant's works; that defendants, in bringing these actions, unlawfully combined to vex, harass

and annoy complainant with a multiplicity of suits; that they made and entered into champertous and unlawful agreements with their attorneys, by which the latter's fees were made contingent and to depend upon the recoveries to be had in the several actions, if at all; that the complainant does not know, and has no means accessible in Tennessee to ascertain, what estates, if any, said defendants hold in said lands upon which their respective damage suits aforesaid are predicated; that the records in Polk county were destroyed several years ago, and but few title papers have been registered, and hence complainant is unable to determine what rights, if any, the defendants have in the premises; and it insists that it is entitled to have a discovery from defendants, and each of them, as to the quantities of estate held, and by what title, if any, and how evidenced and acquired, and to have a proper reference in this behalf, which can not be had and made in said actions at law.  It is alleged that the gravamen of each of said suits against complainant is identical, and arises from the same identical cause, that is, from alleged injuries occasioned by smoke and gases emitted from the roast piles and works of complainant, which defendants in their said suits insist constitutes an actionable nuisance; that, as before stated, defendants in their said suits are making common cause of their actions, co-operating and having themselves subpoenaed as witnesses, and manipulating the cases so

as to pile up enormous bills of costs, which they seek to cast upon complainant.

It is further alleged, that, even assuming the naked legal right of defendants to be in some sense impaired, the matters involved form rather the basis of an equitable accounting, under proper orders, than grounds for actions at law by a multiplicity of suits, seeking recovery of compensatory and punitive damages by the unmeasured and uncertain modes applicable to trials at law. It is, moreover insisted that inasmuch as the alleged right of action in said suits originates from the same cause, constituting, as insisted, a nuisance, a court of equity, exercising rightful jurisdiction, will intervene in order to prevent a multiplicity of suits, and stay, by injunction, actions at law, and administer relief in its own court, according as the parties may be entitled. As already stated, each of the defendants interposed a demurrer to this bill, assigning 12 different causes. The main assignment of demurrer is that a court of chancery has no jurisdiction of the matters and grievances alleged in the bill, and the same are purely cognizable in a court of law. The fourth ground of demurrer is that the bill is multifarious on its face, and seeks a joinder of parties whose interests are distinct, whose legal rights are distinct, and in which the recovery of one plaintiff does not depend upon the law and evidence of any other litigant; each plaintiff

Ducktown Sulphur, Copper & Iron Co. v. Fain.

relying for a recovery of damages in an action at law for injuries done to his property. The sixth demurrer is that a court of law has full and plenary jurisdiction of all champertous contracts, and the bill alleges no ground showing that it has not a full and complete remedy at law to prove said champertous contracts, if any existed. Moreover, there is to-day no law against such contracts in force in Tennessee, since the champerty law was repealed by Acts 1899, c. 173, and has been declared not in force.

The ninth ground of demurrer is that the discovery of title and quantity of estate owned by defendants, which is sought in the bill, could have been accomplished at law. Moreover, it is claimed that defendants' suits did not involve the title to land, but are personal actions, and not local actions. The tenth cause of demurrer is that the bill shows on its face that each defendant has brought his separate and distinct suit for himself, and that said suits are not at all brought by the same person or persons, holding in common or claiming title under a common grantor. The chancellor overruled the demurrers, holding they were to the whole bill. The court of chancery appeals reversed the action of the chancellor, sustained the demurrers, and dismissed the bill.

We will first notice the question of discovery. It will be observed that the present bill is sought to be

maintained as a bill of discovery, to compel defend-
ants to disclose nature of their titles and quantity of
estate owned by them in the land claimed to have
been injured, and also to disclose the time, place and
terms of the alleged champertous contracts made
with their attorneys to prosecute said actions at
law.

The jurisdiction in equity to compel discovery
originated in the absence of power in courts of law
to afford such relief by their own process, either by
the oath of a party, or by the production of deeds,
books and writings in his possession or under his
control. 2 Beach, Mod. Eq. Jur., sec. 855. In this
State for many years it has been the law that either
party to a suit at law is entitled to a discovery from
the other party of any matters material to the issue
of such suit, in all cases where the same party would,
by the rules of equity, be entitled to a discovery in
aid of such suit. Acts 1847-48 and 1849-50,
Shannon's Code, sec. 5684; *Bumpass* v. *Reams,*
1 Sneed, 598, 599. But either party may
now have the benefit of his adversary's tes-
timony as a witness, in the usual way, with-
out resorting to either a bill or petition for a
discovery. *Weakly* v. *Miller*, 1 Tenn. Ch., 527, 528.
It is therefore very obvious that there was no neces-
sity for complainant to go into a court of equity to
compel a discovery of the matters alleged in the bill,
as its remedy was ample and untrammeled in the

circuit court, where the damage suits were pending. Again, the bill could not be maintained as a bill of discovery, since it goes further, and seeks affirmative relief.   2 Beach, Mod. Eq. Jur., sec. 855.

The remaining question is whether or not the bill may be maintained to prevent a multiplicity of suits. This question arose and was very thoroughly considered in the case of *Tribette* v. *Railroad Co.,* 70 Miss., 182 (12 South., 32; 19 L. R. A., 660; 35 Am. St. Rep., 642), in a very vigorous opinion by Chief Justice Campbell.  In that case it appeared that a number of different owners of property destroyed by fire from sparks emitted by an engine of the company severally sued in the circuit court to recover of the company damages for their respective losses by said fire, alleged to have resulted from the negligence of defendant.  The company filed a bill in equity seeking to enjoin the prosecution of these suits upon the ground they all grew out of the same occurrence, and depend for their solution upon the same questions of fact and law, and to prevent multiplicity of suits, and the consequent harassment and vexation, the several plaintiffs were sought to have their different actions settled in one suit in equity.

The court declined to follow the text of Pomeroy in his work on Equity Jurisprudence, which apparently sanctioned the granting of the injunction, stating that, after careful examination and a full consideration, Mr. Pomeroy was not sustained in this conclusion an-

nounced in section 269, and that the cases he cited do not maintain the proposition that mere community of interest "in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against such individual member of the numerous body," is ground for the interposition of chancery to settle in one suit the several controversies. The court reviewed all the authorities cited by Mr. Pomeroy for his text, and showed that every case was resolvable on some well-recognized principle of equity procedure, and was not at all pertinent to the text. The court stated that the recovery of damages for a tort does not pertain to courts of chancery, which decree damages only in a very limited class of cases, or under peculiar circumstances, or as an incident to some other relief. The court stated the sound doctrine to be that, in order to warrant a bill to prevent multiplicity of suits, there must be some recognized ground of equitable cognizance, or some community of interest in the subject-matter of controversy, or a common right or title involved, or there must be some common purpose in pursuit of a common adversary, where each may resort to equity in order to be joined in one suit; and it is not enough that "there is a community of interest merely in the question of law or fact involved," as stated by Pomeroy in section 268. We believe the true rule is that stated by Chief Justice Campbell, and that observance of it makes clear

Ducktown Sulphur, Copper & Iron Co. v. Fain.

a very complicated subject.   A court of equity has
never had jurisdiction to assess damages in such a
case, and the Act of 1877 increasing the jurisdiction
of the chancery court expressly excepts unliquidated
damages to persons, property and character.   But it
is argued that grounds for equitable cognizance of
this bill are stated in the following allegations, name-
ly, that the defendants (the 21 plaintiffs in the
original suits) in the circuit court "unlawfully com-
bined to vex, harass and annoy complainant with a
multiplicity of suits, and that in so doing they insti-
tuted said actions mostly along about the same time,
under an agreement so to do, substituting their oaths
in lieu of bonds, experimenting with the courts of
Tennessee, making and entering into unlawful and
champertous agreements with their attorneys, where-
by the latter's fees were contingent and dependent
upon the recoveries to be had in the several actions;
but the particular terms and provisions of said
agreements are unknown to complainant, and it has
no means of establishing the same, except by a dis-
covery from the parties themselves.

The question is made, upon these allega-
tions, whether several parties can lawfully en-
ter into an agreement for all of them to sue
an adversary, where there is no community
of interest among them, without such a combination
being subject to equitable interference by injunction
to prevent multiplicity of suits and vexatious liti-

Cates 1-3

gation. We are of opinion, however, when the entire context of the allegation, or, rather, the whole sentence in which it occurs, is considered, it charges, upon information and belief, that the defendants unlawfully combined to vex, harass and annoy complainant with a multiplicity of suits, etc.; but the particular terms and provisions of said agreements are unknown to complainant, and it has no means of establishing the same by proof, except by a discovery from the parties themselves." It thus appears that the whole object of charging this unlawful combination was to obtain a discovery from the defendants. We have already seen that, under our practice, complainants have an adequate remedy at law to compel the discovery sought, and that the circuit court is vested with plenary jurisdiction to grant all the relief asked, to prevent the piling up of all unnecessary bills of costs, the prosecution of champertous suits, etc.

For the reasons stated, the decree of the court of chancery appeals is affirmed.