Covert *et al. v.* Nashville, C. & St. L. Ry.

(*Nashville*, December Term, 1947.)

Opinion filed February 28, 1948.

Lewis S. Pope and Whitworth Stokes, both of Nashville, for appellants.

K. Harlan Dodson, Jr., Edwin F. Hunt and Walker & Hooker, all of Nashville, for appellee.

Mr. Justice Burnett delivered the opinion of the Court.

The Railroad and Public Utilities Commission of this State ordered the appellee railroad to charge no more than a named amount for carrying intrastate passengers from one point in the state to another. Different amounts were fixed for coach, and sleeping and parlor cars. The Interstate Commerce Commission authorized a larger amount, one to correspond with interstate travel. Due to this conflict, the Railroad and Public Utilities Commission joined with like commissions from other states and sought to enjoin this increased fare. A three

judge Federal Court, consisting of one Circuit and two District Judges, denied this injunction. *State of Alabama* v. *United States, D. C.,* 56 F. Supp. 478. On direct appeal to the Supreme Court of the United States that Court reversed:

"Because the order of the Commission (referring to the Interstate Commerce Commission) was not based on adequate findings supported by evidence, the District Court should have declined to enforce the Commission's order. The judgment of the district court is therefore reversed." *State of Alabama* v. *United States,* 325 U. S. 535, 65 S. Ct. 1274, 1275, 89 L. Ed. 1779.

The Chief Justice and three associate Justices dissented.

On remand to the District Court, that Court entered an order in part as follows: "It Is Further Ordered, Adjudged And Decreed that the corrected order of the Interstate Commerce Commission, dated May 8, 1944, in Alabama Interstate Fares, 258 I. C. C. 133, insofar as it relates to the intrastate fares and charges within the States of Alabama and Tennessee, and the Commonwealth of Kentucky, be, and the same is, hereby enjoined, set aside, and annulled, effective July 25, 1945."

During the period the Interstate Commerce order was in effect the appellee railroad collected its allowed increased fare over and above that as allowed by the Railroad and Public Utilities Commission. In this period every purchaser of an intrastate fare was given on request a receipt for the excess payment: "To provide intrastate passengers with evidence of excess payments for use in claiming refunds in the event the Supreme Court of the United States sets aside the order of the Interstate Commerce Commission increasing intrastate fares in Tennessee."

The instant suit is an independent action begun in the Chancery Court of Davidson County based on receipts for overage paid as above set forth. The complainants herein are two in number. They file other receipts similar to theirs and allege there are "many hundreds of fare-paying passengers" similarily situated. They ask that they be allowed to bring this suit for themselves "and all others similarly situated,—" and ask a declaratory judgment to fix their rights and the liability of the railway company. They say that in thus determining the matter the court can avoid a multiplicity of suits and unnecessary litigation. It is also alleged that the railroad collected in excess of $250,000 in "illegal and exorbitant" fares in the above manner. In argument it is said that the sum thus collected is a trust fund to which these complainants and others similarily situated are entitled.

To this action the railway company filed a demurrer in which it says: "There is no averment or showing in the bill that such individual claims of complainants, considered separately or in the aggreate, amount to $50.00 or more, and, therefore, such suit is not within the jurisdiction of this Court."

Coupled with this demurrer is an answer which also challenges the jurisdiction of the Court and answers the averments of the bill.

The Chancellor sustained the demurrer and dismissed the bill. The Railroad and Public Utilities Commission attempted to intervene herein but were denied this request. This Commission does not here assign error to being thus denied the right to intervene.

The bill herein is adroitly drawn. No where therein is it stated just what amount either or both complainants seek. By an examination of the exhibit filed with the

bill wherein these amounts may be determined it is mathematically ascertainable that the total of all overage is much less than $50.

As to equity jurisdiction, in so far as here applicable, Williams' Code provides:

Section 10350—"Equity causes over fifty dollars.— It has exclusive original jurisdiction of all cases of an equitable nature, where the debt or demand exceeds fifty dollars, unless otherwise provided by this Code."

Section 10351—"But not under.—It has no jurisdiction of any debt or demand of less value than fifty dollars, unless otherwise specifically provided."

In arriving at an interpretation of these Code Sections this Court has said: "that the jurisdiction of a Chancery Court is limited by the amount only in those cases of an equitable nature where the Chancery Court has exclusive original jurisdiction, and that there was no intention to limit the jurisdiction of the Chancery Court by the amount in those cases where the court had exclusive ancillary jurisdiction in the enforcement of a claim or a demand. The term 'original jurisdiction' of cases of an equitable nature evidently refers to that class of cases where the right of action itself is of an equitable nature, and not to those cases where the remedy is of such a nature as that a Court of Chancery only can apply." *Tinsley* v. *Bryan*, 148 Tenn. 256, 261, 255 S. W. 49, 50.

The limit of amount upon the jurisdiction is not applicable in an ejectment case (*Frazier* v. *Browning*, 79 Tenn. 253), nor in *mandamus* (*State ex rel.* v. *Alexander*, 115 Tenn. 156, 157, 90 S. W. 20), nor to set aside a fraudulent conveyance. *Tinsley* v. *Bryan, supra.* Where a money demand alone is sought the case will be dismissed on proper pleading. *McNew* v. *Toby*, 25

Tenn. 27. Without setting out applicable cases the following are outstanding examples in which courts of equity take original jurisdiction; accounting, partition, specific performance, discovery, interpleader, quieting title or removal of cloud from title, cancellation, reformation, and injunction.

 We think that it is generally conceded that a claim such as the two here presented constitutes nothing more than an alleged debtor creditor relationship. The differences between parties on such claims is litigated under our practice in the Circuit Court or law court after first being started before a justice of the peace or a court of general sessions. They there do not have the amount question involved. Obviously there must be something unusual or extraordinary to give the Chancery Court jurisdiction. This being true this action is brought as a class action. Our Chancery Courts have taken jurisdiction of such actions under a proper state of facts. Are there sufficient allegations herein to justify the bringing of a class suit?

The gravamen of the allegation for so bringing is that in doing so a multiplicity of suits will be forestalled. Speaking on this subject this Court adopted and quoted from *Hale* v. *Allinson*, 188 U. S. 56, 77, 23 S. Ct. 244, 252, 47 L. Ed. 380, as follows:

 "Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits, and upon a survey of the · real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on

this ground, and whether within reasonable and fair grounds the situation is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interest of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff; and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction.''

The above was quoted and approved in *Dixie Fire Insurance Co.* v. *American Confectionery Co.*, 124 Tenn. 247, 267, 136 S. W. 915, 34 L. R. A., N. S., 897. We have reviewed carefully all the authorities cited in excellent briefs of counsel and have likewise made an independent investigation of authorities The better view seems to be ''that the Chancery Court will not take jurisdiction of the suit where the rights of the parties are separate, although they have a common origin or are to be determined in view of the same facts or legal principles.'' 19 Am. Jur., p. 93, sec. 80. The courts seem to be in general agreement that whether or not jurisdiction is taken on this ground involves an exercise of judicial discretion. It is our observation from the many cases we have examined on this subject that ordinarily it is the defendant who is attempting to corrall all claimants against it in one suit. Obviously the defendant desires to do so to save itself costs and expenses when many suits are threatened. Unless there is something of an equitable nature in requests

of the kind the courts ordinarily refuse the relief asked. This is especially true when the parties have an adequate remedy at law even though there will be many suits. An example is *Ducktown Sulphur, etc.,* v. *Fain,* 109 Tenn. 56, 70 S. W. 813, 815, where the principle as quoted above from *Hale* v. *Allinson,* was invoked and the company denied the prayer to enjoin a multiplicity of suits upon the ground of a "community of interest merely in the question of law or fact involved." We do not deem it helpful to cite and digest a host of cases on the subject. In the main, each case must be determined on the facts presented in the particular case.

 "Class suits have long been recognized in equity jurisprudence. Where the interested persons are very numerous, it is impracticable, if not impossible, to make all of them parties and to prosecute the suit to judgment. As a matter of convenience, therefore, and to prevent a failure of justice, a court of equity permits less than all of the members of the class to act as representatives of the entire body; and the decree is deemed to bind the membership in general as though all the individuals were before the court." 19 Am. Jur., p. 124. This statement, in practical application, is an excellent summation of when a class action is applicable.

 In the instant case the complainants in reality set forth separate and distinct transactions between each complainant and those that might file a claim and the railway company for which each has a speedy and adequate remedy at law. No equitable relief is sought. They seek merely a recovery of money allegedly wrongfully withheld by the railway company. It is certainly true that the various claims filed herein and that might be filed are similar, all for refunds of claimed overage charged, they may be numerous and are kindred. This though does not

clothe them in a cloak of equity. Many cases present, and we can readily imagine many claims growing out of one accident, wrong or undertaking which purely sound in damages or in a debtor creditor relationship. In all these there is a plain, clear adequate remedy at law. There seems to be no plausible reason to invoke equity jurisdiction herein.

Is the money received by the railway company for this overage a trust fund?

Clearly there is no express trust created. Should a court of equity declare a constructive or implied trust created under the facts alleged in this bill? Such a trust "arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." 54 Am. Jur., p. 167, section 218.

In our comment on this feature or any other feature of this litigation we do not say the railway is or is not liable at law for the overage claimed by these complainants or any others who may so claim.

Let us examine how these funds were received by the railway company. We will assume that the railway company asked for the Interstate Commerce order increasing its fares. It had this right and presumably had the Interstate Commerce Commission's findings (on which it based the increase) been based on sufficient evidence the allowance would have been sustained. Four of nine Justices of the Supreme Court of the United States thought the finding valid as allowed. Under a similar state of facts the Supreme Court of the United States denied the right

of restitution where the Interstate Commerce Commission later determined upon sufficient evidence and sufficient findings that the rate formerly fixed was justified. See *Atlantic Coast Line R. Co.* v. *State of Florida*, 295 U. S. 301, 55 S. Ct. 713, 79 L. Ed. 1451. No claim was made for this overage in the action before the District Court of the United States in which the overage here was held unwarranted. The railway company herein was allowed until a specified time within which to restore the prescribed state rate without objection. No malfides, fraud, unconscionable or inequitable conduct can be charged to the railway company herein. A trust of the character here under discussion must be based on some fraud, abuse of fiduciary position, or gaining of an inequitable advantage. We cannot find any of these requisites herein.

Any money in the hands of the railway company came from separate contracts made with each purchaser of a ticket. Each sale created insofar as the overage is concerned a debtor creditor relationship between the parties. Each party is entitled to a jury trial, if demanded, to determine the amount each is due under the transaction. Such trials will furnish a complete, adequate and speedy remedy at law. We can see no occasion for an action in equity. There is no showing herein that this fund has been segregated or set apart from the general funds of the company. There is no claim of insolvency or that the individual claimants are threatened with a loss of their respective rights.

For the reasons set forth herein the decree of the Chancellor must be affirmed.