IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 11, 2005 Session

# XL SPORTS, LTD. v. $1,060,000 PLUS INTEREST TRACEABLE TO RESPONDENT, *RES*, and JERRY LAWLER

Direct Appeal from the Chancery Court for Shelby County
No. 00-0692-3     D. J. Alissandratos, Chancellor

No. W2005-00689-COA-R3-CV - Filed January 26, 2006

Following a transaction involving the sale of a business, the plaintiff filed suit against several defendants in federal court alleging causes of action grounded in federal and state law. The federal jury found some of the defendants liable, but they concluded that one of the defendants did not engage in any wrongdoing during the transaction at issue. Thereafter, the plaintiff filed suit in a Tennessee chancery court seeking to impose a constructive trust over funds held by the defendant exonerated by the jury. The defendant removed the case to the federal district court. The district court determined that the claim was barred by the doctrine of res judicata. The plaintiff appealed to the federal court of appeals, which ruled that the case was not properly removable, as it only presented a claim based upon state law. On remand to the chancery court, the defendant asserted the affirmative defenses of res judicata and collateral estoppel. The chancery court subsequently granted the plaintiff's motion for summary judgment. The defendant appealed to this Court. We reverse the chancellor's grant of summary judgment to the plaintiff, and we hold that the plaintiff's claim for a constructive trust is barred by the doctrines of res judicata and collateral estoppel. Accordingly, we dismiss the case in its entirety.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed; Case Dismissed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Leonard W. Yelsky, Cleveland, OH; Joseph D. Barton, Millington, TN, for Appellant

Larry E. Parrish, Memphis, TN, for Appellee

# OPINION

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves a tortured procedural history which began in the federal courts and involved multiple parties.[1] We are presently asked to resolve an aspect of the dispute involving XL Sports, Ltd. (hereinafter "XL Sports" or "Appellee") and Jerry Lawler (hereinafter "Lawler" or "Appellant"). In order to properly characterize the present controversy, we borrow the following statement of facts from the most recent opinion issued by the United States Court of Appeals for the Sixth Circuit in this case:

> The United States Wrestling Association, or USWA, was a trade name used to designate a wrestling entertainment business based in Memphis, Tennessee. The USWA distributed a weekly wrestling television show and promoted periodic live wrestling events.
>
> For 20 years prior to October of 1996, the USWA had been co-owned by the same two men: Jerry Jarrett and the defendant, Jerry Lawler — the latter known to wrestling afficionados as "The King." Jarrett had initially owned a majority interest in the business, but he and Lawler each held a 50% share by 1996.
>
> Jarrett testified that although the USWA had been highly profitable in the 1980s, it was regularly losing money by the mid-1990s. Lawler nonetheless approached Jarrett in the summer of 1996 with an offer to purchase Jarrett's half of the business. Jarrett, who said that he was burned out after spending many years in the world of professional wrestling, was willing to sell. By an agreement dated November 15, 1996, Jarrett undertook to sell his half of the business to Lawler for $250,000.
>
> Despite the USWA's red ink, Lawler entered into an employment contract in October of 1996 with a man known as Larry Burton, promising to pay Burton $750,000 in 52 equal installments. It is unclear precisely what consideration Burton was to render under his employment contract. Furthermore, the parties disagree as to whether Burton was working for Lawler personally or for the USWA. But Lawler does admit that the employment contract contained monetary incentives for Burton if he helped increase the revenue of the business.

---

[1] *See XL Sports, Ltd. v. Lawler*, No. 01-5363, 2002 U.S. App. LEXIS 21168 (6th Cir. Oct. 8, 2002); *Burton v. Selker*, Nos. 99-3777, 99-3778, 99-3779, 00-3095, 2002 U.S. App. LEXIS 2771 (6th Cir. Feb. 19, 2002); *In re XL Sports, Ltd.*, 234 F.3d 1271 (6th Cir. 2000) (per curiam); *Burton v. Selker*, 36 F. Supp. 2d 984 (N.D. Ohio 1999).

At the same time he was sounding out Jarrett about selling, Lawler was working on a deal to sell Burton the entire business. Lawler and Burton signed a letter of agreement in December of 1996 under which Lawler undertook to sell "all or part" of the wrestling business at a price of $500,000 for each 25% share. Burton represented in the letter that he would pay $500,000 for one such share within the next week. The letter gave Burton the option to increase his ownership interest by paying an additional $500,000 for each additional 25% interest he elected to take, as long as the payments were made within specified periods during the succeeding 360 days.

In the meantime, Burton entered into a separate but related agreement with a man named Mark Selker. Selker, according to a letter dated December 13, 1996, promised to contribute $250,000 toward Burton's purchase of the initial 25%. Selker further agreed to bear half the cost if and when the options to purchase the remaining 75% were exercised. In order to carry out his part of this transaction, Selker formed a limited liability company, XL Sports, Ltd., the plaintiff in the matter now before us.

In December of 1996 Lawler honored his agreement to purchase Jarrett's half of the wrestling business by paying $187,500 to Jarrett and $62,500 to Burton. (The latter payment was described as a commission for Burton's work in helping to arrange the sale.) At about the same time, Lawler received $250,000 from XL in partial payment for the first 25% increment.

By June 6, 1997, according to a letter of that date, Burton and Selker had paid Lawler a total of $1,100,000; they proposed to pay $900,000 more within a week, thereby acquiring 100% of the business. Lawler agreed to the terms set forth in the June 6 letter, and on June 20, 1997, he executed a notarized bill of sale transferring all of the USWA's assets to XL.

On November 21, 1997, XL filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Western District of Tennessee. A few days later, acting as debtor-in-possession, the company instituted an adversary proceeding against Lawler in the bankruptcy court. The stated object of this proceeding was to avoid, under the provisions of 11 U.S.C. § 548(a), what XL claimed to have been a fraudulent transfer of the USWA business.

In addition, XL sued Lawler, Burton and several other individuals in the United States District Court for the Western District of Tennessee. The complaint, which sought damages and equitable relief under the Racketeer Influenced and Corrupt Organizations Act,

-3-

charged the defendants not only with racketeering, but with common law conversion, fraud, and conspiracy to injure XL's business. Burton filed his own complaint against Mark Selker, the latter's father Eugene Selker, and the Selkers' law firm, alleging legal malpractice, interference with business relationships, and fraud. Lawler, for his part, instituted an action seeking damages from Burton, the Selkers, the Selkers' law firm, and that firm's other name partner. Numerous cross-claims and counter-claims followed. All three of these cases were eventually consolidated and transferred to the United States District Court for the Northern District of Ohio in Cleveland, where they went to trial before a jury.

The Cleveland jury reached a verdict, on which judgment was entered, finding that Burton and his son, Jayson Bertman, had engaged in racketeering. Damages totaling $865,000 were assessed against them. (The judgment was later amended to reflect that Burton and Bertman were jointly and severally liable for this amount, and that XL was entitled to treble damages, or $ 2,595,000, under 18 U.S.C. § 1964(c).) The jury also found Burton liable for conversion and fraud, with respect to which $235,000 was awarded in compensatory damages and $3,300,000 in punitive damages. Finally, the jury found in favor of Lawler as to all of XL's claims against him. In this connection the jury explicitly found that XL had failed to prove that Lawler had wrongfully exercised dominion over XL's property in denial of XL's rights to that property. The court directed a $ 1,000,000 verdict for Lawler in his suit against Burton, an amount Burton had previously admitted to owing.[2]

Two weeks after the entry of judgment in the Cleveland case, XL moved for summary judgment in its adversary proceeding against Lawler. XL asserted that the recent trial had resolved all factual issues in its favor and that, under 11 U.S.C. § 544(b) and the common law of Tennessee, Lawler was bound to deliver $1,100,000 to the bankruptcy estate. Lawler countered with a motion for judgment on the pleadings in which he asserted that the claims advanced in XL's adversary proceeding were barred by the judgment in the Cleveland case. The bankruptcy court denied both motions.

*XL Sports, Ltd. v. Lawler*, No. 01-5363, 2002 U.S. App. LEXIS 21168, at *3–9 (6th Cir. Oct. 8, 2002) (footnotes omitted).

---

[2] The various rulings by the district court during the pendency of the trial and the jury's verdict were appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed the district court's rulings and the jury's verdict in all respects. *See Burton v. Selker*, Nos. 99-3777, 99-3778, 99-3779, 00-3095, 2002 U.S. App. LEXIS 2771 (6th Cir. Feb. 19, 2002).

On April 11, 2000, XL Sports filed a complaint against Lawler in the Chancery Court of Shelby County asserting the following: "[XL Sports] contends that Lawler, as the recipient of the $1,100,000 finally adjudged to have been stolen from [XL Sports], is, as a matter of law, a constructive trustee of [XL Sports] required, as a matter of law, to turn over the $1,100,000, with interest, to [XL Sports]."[3]  In essence, XL Sports maintained that, since the jury in the federal case found that Burton and other defendants were guilty of unlawfully taking the $1,100,000.00 from XL Sports, Lawler, even though the jury found that he had no culpability in the taking, could be considered a constructive trustee of the $1,100,000.00 paid to him over the course of the transaction. In response to XL Sports' complaint, Lawler filed a notice of his intention to remove the case to the United States District Court for the Western District of Tennessee.  Once the suit landed in the district court, XL Sports moved to have the case remanded to the chancery court, which the district court handled as follows: "The district court denied the remand and, at Lawler's request, withdrew the reference of XL's adversary proceeding to the bankruptcy court.  The adversary proceeding and the removed Tennessee suit were then consolidated, after which the district court entered judgment in favor of Lawler on *res judicata* grounds."  ***XL Sports, Ltd.***, 2002 U.S. App. LEXIS 21168, at \*9. An appeal to the United States Court of Appeals for the Sixth Circuit followed.  ***Id.***

On appeal, the federal court of appeals considered the issue of whether the case could be properly removed from the chancery court to the district court.  ***Id.*** at \*9.  At the outset, the court of appeals made the following observation: "Although it is true that [XL Sports'] Tennessee complaint alleges that the prior federal suit established some of the facts relevant to the company's constructive trust claim, the complaint invokes only the common law of Tennessee as a basis for relief."  ***Id.*** at \*15–16.  In subsequently ruling that XL Sports' complaint filed in the chancery court was not properly removable to the district court, the court of appeals stated as follows:

> All of which brings us, at last, to the district court's holding that the claims advanced in XL's adversary proceeding are barred under the doctrine of *res judicata*.  Relying mainly on an unpublished Tennessee Chancery Court case, *Gindt v. Beaty*, No. 101372-3 (January 26, 1993), XL argues that neither of its claims is precluded because both are directed against the supposedly stolen money in rem and not against Lawler *in personam*.  In addition, XL asserts that the judgment entered in the Cleveland case precludes Lawler from challenging its claim that the money transferred to his bank accounts was obtained by fraud.
>
> . . . .

---

[3] As the United States Court of Appeals for the Sixth Circuit noted, XL Sports apparently filed this suit in response to statements made by the bankruptcy judge during a conference with the parties to the bankruptcy proceeding. ***XL Sports, Ltd.***, 2002 U.S. App. LEXIS 21168, at \*9.

The doctrine of *res judicata*, or "claim preclusion," as one branch of the doctrine has come to be called in academic circles, prohibits parties or their privies from relitigating claims that were or could have been decided in a previous action between the same parties, where the previous action has ended in a final judgment on the merits. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). XL and Lawler were both parties to a lawsuit based on the facts at issue here, which lawsuit ended with a final judgment reflecting a finding by the jury that Lawler had not wrongfully exercised dominion over XL's property in denial of XL's rights. In the present case, however, XL acts as a debtor in possession, seeking to exercise the right of a trustee to avoid a fraudulent transfer. *See* 11 U.S.C. § 1107(a). A trustee in bankruptcy "represents the interest of all creditors of the Debtor's bankruptcy estate," and is therefore not generally considered to be in privity with the debtor. *See In re Fordu*, 201 F.3d 693, 705-06 (6th Cir. 1999). A debtor in possession may likewise act as a representative of the bankruptcy creditors. *See Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 462 n.8 (6th Cir. 1982).

Under XL's theory of this case, Lawler is a constructive trustee for funds that were stolen from XL, the constructive beneficiary. XL argues that under *Gindt* and the Tennessee cases cited therein, such a beneficiary retains title to those funds held in trust that can be traced. *See, e.g., State ex rel. Robertson v. Thomas W. Wrenne & Co.*, 170 Tenn. 131, 92 S.W.2d 416, 417 (Tenn. 1936) (holding that when a trustee bank commingles its own funds with the beneficiary's, the trustee is presumed to withdraw its own funds first). The company makes no mention of any creditor who would be able to assert this Tennessee law claim that ultimately underlies its § 544(b) action.

As *Gindt* framed it, the key question for a claimant like XL is whether, "where the [stolen] property can be traced, the rightful owner is entitled to recover that which belongs to him." (Emphasis added.) As is not true under the state fraudulent transfer statutes that are usually the subject of § 544(b) cases, *Gindt* confers no independent cause of action on creditors. Tennessee's Fraudulent Conveyance Act, in contrast, specifically provides that a creditor may "have the [fraudulent] conveyance set aside or obligation annulled to the extent necessary to satisfy the creditor's claim." Tenn. Code Ann. § 66-3-310(1). It appears that XL, as the debtor in possession, can only assert a § 544(b) *Gindt* claim insofar as it steps into the shoes of the "rightful owner." Here the alleged "rightful owner" is XL itself.

If XL is in fact the rightful owner of the $ 1.1 million it transferred to Lawler, the issue before us is whether XL's *Gindt* claim

under § 544(b) is barred by the doctrine of *res judicata*. In the prior Cleveland case, XL asserted several common law causes of action against Lawler, including fraud and conversion, but did not mention its claim under *Gindt*. The jury exonerated Lawler. The entry of judgment on the jury's verdict precludes XL from now going after Lawler on the theory underlying the adversary proceeding, that theory being one that could have been asserted in a prior suit between the same parties in which there is now a final judgment on the merits. In light of the fact that the *Gindt* claim could only be asserted by XL itself, and not by its creditors, the doctrine of *res judicata* precludes the company from asserting its claim as a debtor in possession. *Cf. In re Marlar*, 267 F.3d 749, 756 (8th Cir. 2001) (finding that a creditor who already sued under a state fraudulent transfer act could not benefit from a subsequent suit by a trustee under § 544(b), even though other creditors might); *In re Hansler*, 988 F.2d 35, 37-38 (5th Cir. 1993) (finding that a prior state court judgment precluded a contrary judgment in a non-core bankruptcy proceeding).

*Id.* at *25–30 (footnotes omitted).

Once the case had been returned to the chancery court, Lawler filed a motion to dismiss XL Sports' complaint or, in the alternative, a motion for summary judgment asserting that the complaint was barred under the doctrines of res judicata and collateral estoppel. On December 9, 2002, XL Sports, designating itself as a Debtor in Bankruptcy,[4] amended its complaint filed in the chancery court "by deleting the complaint in its entirety and in its place and stead, states its cause of action against $1,060,000, Plus Interest, Traceable to Respondent (hereinafter "Res") and against respondent, Jerry Lawler." In its amended complaint, XL Sports alleged the following: "[XL Sports] contends that Lawler, as the person to whom the Res was physically delivered, and who thereafter exercised dominion and control over the Res, as a matter of law, is a constructive trustee of [XL Sports] required, as a matter of law, to turn over the Res, with interest, to [XL Sports]." According to XL Sports, Lawler admitted during the trial in federal district court that he received the $1,060,000.00 sought by XL Sports and that he dispersed a portion of the funds to various individuals or entities. XL Sports also maintained that the opinion by the United States Court of Appeals for the Sixth Circuit issued on October 8, 2002 constituted the law of the case.

On December 11, 2002, XL Sports filed its response to Lawler's motion to dismiss the complaint. Therein, XL Sports made the following assertion: "The Sixth Circuit positively decided that the final judgment of the federal court in Cleveland has no preclusive effect via *res judicata* or any other doctrine that inhibits or otherwise negatively impacts the entitlement of XL to the relief

---

[4] Specifically, XL Sports noted the following: "Debtor files this case in its capacity as a debtor in bankruptcy but not as a debtor-in-possession serving as the trustee of the bankruptcy estate by the petition filed in the United States Bankruptcy Court for the Western District of Memphis, Tennessee . . . ."

sought by XL in this Court. . . . Frankly, while this Court certainly would not have been precluded from making a determination as to whether the final judgment in the federal court in Cleveland presented a *res judicata* or collateral estoppel bar in this Court, the appellate decision of the Sixth Circuit on the question precludes further consideration of the question in this Court." The very next day, XL Sports filed its motion for summary judgment. On December 18, 2002, Lawler answered XL Sports amended complaint reasserting as a defense that XL Sports' claims were barred by res judicata and collateral estoppel.

On January 3, 2003, the chancery court entered an order denying Lawler's motion to dismiss. The chancellor also noted that it was presented with issues of first impression in this case, therefore, it granted Lawler's oral motion for interlocutory appeal. On March 18, 2003, this Court denied Lawler's application for an interlocutory appeal. Lawler appealed the denial of his interlocutory appeal to the Tennessee Supreme Court, which issued an order on September 2, 2003 denying Lawler's application for discretionary review. **See XL Sports, Ltd. v. Lawler**, No. W2003-00102-SC-R9-CV, 2003 Tenn. LEXIS 791, at *1 (Tenn. Sept. 2, 2003). On February 11, 2004, Lawler filed his response to XL Sports' motion for summary judgment in the chancery court. On February 25, 2004, the chancery court entered an order granting XL Sports' motion for summary judgment. Lawler subsequently filed a motion asking the chancery court to alter or amend its judgment, which the court denied on March 24, 2005. Thereafter, Lawler filed a timely notice of appeal to this Court.

Both parties have presented a myriad of issues for review by this Court. All of these issues are subsumed within the overriding issue we are asked to resolve: whether the chancery court erred in granting summary judgment to the Appellee in this case. After reviewing the record submitted on appeal, we reverse.

## II.
### STANDARD OF REVIEW

In reviewing this case on appeal, we employ the following standard of review:

> [T]his case comes to us following the grant of a motion for summary judgment. The standard for reviewing a grant of summary judgment is de novo without any presumption that the trial court's conclusions were correct. *See Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In reviewing the record, "courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). "If both the

facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate." *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 91 (Tenn. 1999).

*Brooks v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 145 S.W.3d 519, 524 (Tenn. 2004).

## III.
### DISCUSSION

When XL Sports filed its lawsuit in federal court, it sought damages and equitable relief based on allegations that Lawler, Burton, and other defendants engaged in conduct which violated the federal racketeering statutes. *See XL Sports, Ltd. v. Lawler*, No. 01-5363, 2002 U.S. App. LEXIS 21168, at *6–7 (6th Cir. Oct. 8, 2002). In addition to its federal law claim, XL Sports sought to recover under the common law theories of conversion, fraud, and conspiracy to injure XL Sports' business. *Id.* at *7. As the federal court of appeals noted, the jury found Burton liable for conversion and fraud, but it "explicitly found that XL had failed to prove that Lawler had wrongfully exercised dominion over XL's property in denial of XL's rights to that property." *Id.* at *8. On appeal, XL Sports asserts that, based on the verdict, the jury found that the money held by Lawler was stolen from XL Sports, but Lawler was not the thief.

The complaint filed by XL Sports in the chancery court has been referred to by the parties and the federal court of appeals as a "*Gindt* claim." On January 26, 1993, Chancellor D.J. Alissandratos of the Chancery Court of Shelby County issued an opinion in a case entitled *Gindt v. Beaty*, No. 101372-3. In *Gindt*, a client gave his lawyer $312,364.68 to be held in escrow and applied toward the purchase of a residence. However, the lawyer began to utilize the funds to pay personal obligations he owed to other individuals. Thereafter, the plaintiff filed suit against the individuals who received the funds from the lawyer seeking to recover the funds. The chancellor ruled that the plaintiff was entitled to trace the funds paid to the lawyer "and recover these sums by imposing a constructive trust upon these funds." Relying on the trial court's order in *Gindt*, XL Sports asserted that it too could seek a constructive trust as to the funds received by Lawler from the transaction entered into between the parties. On appeal, Lawler argues that the chancellor in the present case erred by granting summary judgment to XL Sports because its *Gindt* claim is barred by the doctrines of res judicata and collateral estoppel. Specifically, Lawler maintains that XL Sports should have brought its claim for a constructive trust in the case filed in federal court. Moreover, Lawler argues that the jury exonerated him of any wrongdoing, therefore, XL Sports' attempts to impose a constructive trust on the funds in his possession must fail for that reason as well. We agree.

It is well established that a prior judgment in one case may have preclusive effect in a subsequent action under both the related but distinct doctrines known as res judicata and collateral estoppel. *See Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987); *see also Cromwell v. County*

*of SAC*, 94 U.S. 351, 352–55 (1877) (discussing the distinguishing characteristics between claim preclusion and issue preclusion); *King v. Brooks*, 562 S.W.2d 422, 423–24 (Tenn. 1978) (noting the differences between the doctrines of res judicata and collateral estoppel).

Res judicata is a claim preclusion doctrine which is intended to promote finality in litigation. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976). It constitutes an affirmative defense which must be plead specially. *See* Tenn. R. Civ. P. 8.03 (2005); *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977). "The principle of claim preclusion prevents parties from splitting their cause of action and requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together." *Bernard v. Sumner Reg'l Health Sys.*, No. M2002-02962-COA-R3-CV, 2003 Tenn. App. LEXIS 898, at *11 (Tenn. Ct. App. Dec. 22, 2003) (citations omitted); *see also Boyd v. Bruce*, No. M2000-03211-COA-R3-CV, 2001 Tenn. App. LEXIS 816, at *9 (Tenn. Ct. App. Nov. 2, 2001). In order to prevail, a party asserting res judicata as a bar to subsequent litigation must prove the following:

> (1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties were involved in both suits; (3) that the same cause of action was involved in both suits; and (4) that the underlying judgment was on the merits.

*Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990) (citations omitted). The parties do not contest that the federal court had both in personam and subject matter jurisdiction in this matter, nor do they contest that the federal court's judgment constituted a resolution of the case on its merits.

We begin by examining whether the parties involved in both suits are the same. When XL Sports originally filed its complaint in the chancery court, it did so as a debtor in possession. After the case was removed to the federal district court and ultimately reached the federal court of appeals, the court of appeals ruled as follows:

> The jury exonerated Lawler. The entry of judgment on the jury's verdict precludes XL from now going after Lawler on the theory underlying the adversary proceeding, that theory being one that could have been asserted in a prior suit between the same parties in which there is now a final judgment on the merits. *In light of the fact that the* Gindt *claim could only be asserted by XL itself, and not by its creditors, the doctrine of* res judicata *precludes the company from asserting its claim as a debtor in possession. Cf. In re Marlar*, 267 F.3d 749, 756 (8th Cir. 2001) (finding that a creditor who already sued under a state fraudulent transfer act could not benefit from a subsequent suit by a trustee under § 544(b), even though other creditors might); *In re Hansler*, 988 F.2d 35, 37-38 (5th Cir. 1993) (finding that a prior state court judgment precluded a contrary judgment in a non-core bankruptcy proceeding).

***XL Sports, Ltd.***, 2002 U.S. App. LEXIS 21168, at *30–31 (emphasis added).  On remand to the chancery court, XL Sports amended its complaint to reflect that it was seeking a constructive trust simply as a business entity.  On appeal to this Court, XL Sports seeks to subtly suggest that the federal court of appeals held that the chancery court could not deem its complaint to be barred by res judicata if it sued in its capacity as a business entity.  However, the federal court of appeals was asked to primarily decide whether XL Sports' complaint could properly be removed to the federal courts, stating that, "[o]n its face, the complaint filed by XL in the Tennessee Chancery Court asserts state claims only."  ***XL Sports, Ltd.***, 2002 U.S. App. LEXIS 21168, at *12.  When rendering its decision that the case should not have been removed from the chancery court, the federal court of appeals would necessarily refrain from issuing an opinion as to whether the state cause of action was barred by the doctrine of res judicata in a state court.  In its present posture, the case involves a lawsuit filed by XL Sports as a business entity against Lawler, the same parties involved in the original suit filed in federal court.  Thus, as the federal court of appeals' decision implies, it is left to the courts of this state to decide whether XL Sports' is barred by the doctrine of res judicata from pursuing its constructive trust claim in the courts of this state.

The resolution of whether XL Sports' claim is barred by the doctrine of res judicata turns on whether the same cause of action is involved in both suits.  Requiring the subsequent cause of action to be identical in all respects to the original cause of action is too narrow a reading of the doctrine of res judicata.  ***See Bernard***, 2003 Tenn. App. LEXIS 898, at *8.  "It has long been the rule in this state that not only issues which were actually determined, but all claims and issues which were relevant and which could reasonably have been litigated in a prior action, are foreclosed by the judgment therein."  ***Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark***, 586 S.W.2d 825, 826 (Tenn. 1979) (citing *Jordan v. Johns*, 79 S.W.2d 798, 802 (Tenn. 1935)); ***see also Nat'l Cordova Corp. v. City of Memphis***, 380 S.W.2d 793, 796 (Tenn. 1964); ***Bernard***, 2003 Tenn. App. LEXIS 898, at *8; ***Whitsey v. Williamson County Bank***, 700 S.W.2d 562, 564 (Tenn. Ct. App. 1985).  "This is true even though the prior case was in Federal Court and the subsequent suit is brought in a State Court."  ***Whitsey***, 700 S.W.2d at 564 (citing *Paverite Inc. v. ITT Indus. Credit Co.*, 621 S.W.2d 759, 762 (Tenn. Ct. App. 1981)); ***see also Penn-America Ins. Co. v. Crittenden***, 984 S.W.2d 231, 232–33 (Tenn. Ct. App. 1998).

The federal courts are given supplemental jurisdiction in the following circumstance:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a) (2003).  "Pursuant to the long established doctrine of pendent jurisdiction, a federal court exercising jurisdiction over a federal question may hear state law claims that derive from a common nucleus of operative fact, such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case."  36 C.J.S. *Federal Courts* § 15 (2003) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997)).  Moreover, the federal courts have chosen to allow multiple claims stemming from a single transaction to be heard in a single action.  *See* Fed. R. Civ. P. 8(a) (2005) ("Relief in the alternative or of several different types may be demanded.");  Fed. R. Civ. P. 8(e)(2) (2005) (authorizing alternative or inconsistent pleading), Fed. R. Civ. P. 13 (2005) (governing counterclaims and cross-claims); Fed. R. Civ. P. 14 (2005) (discussing third-party practice); Fed. R. Civ. P. 18 (2005) (authorizing the joinder of claims and remedies).

"Constructive trusts are those which the law creates, independently of the intention of the parties, to prevent fraud or injustice."  90 C.J.S. *Trusts* § 174 (2002).  Regarding the imposition of a constructive trust in this state, our supreme court has stated as follows:

> It is the well established rule in this State that a constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.  *Covert v. Nashville, C. & St. L. Railway* (1948) 186 Tenn. 142, 208 S.W.2d 1008, 1 A.L.R.2d 154; *Central Bus Lines v. Hamilton Nat. Bank* (1951) 34 Tenn.App. 480, 239 S.W.2d 583.

*Sanders v. Forcum-Lannom, Inc.*, 475 S.W.2d 172, 174 (Tenn. 1972).  Thus, our courts have imposed a constructive trust in the following types of cases:

> 1) where a person procures the legal title to property in violation of some duty, expressed or implied, to the true owner; 2) where the title to property is obtained by fraud, duress or other inequitable means; 3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and 4) where a person acquires property with notice that another is entitled to its benefits.

*Intersparex Leddin KG v. Al-Haddad*, 852 S.W.2d 245, 249 (Tenn. Ct. App. 1992); *see also Tanner v. Tanner*, 698 S.W.2d 342, 345–46 (Tenn. 1985).

In determining whether XL Sports' constructive trust cause of action is barred by the doctrine of res judicata, we employ the following standard: "Stated in transactional terms, [the doctrine] provides that a valid and final judgment extinguishes all claims arising out of the same transaction or series of transactions from which the cause of action arose." *Lowe v. First City Bank of Rutherford County*, No. 01-A-01-9305-CV-00205, 1994 Tenn. App. LEXIS 578, at *7–8 (Tenn. Ct. App. Oct. 19, 1994) (no perm. app. filed); *see also* Restatement (Second) of Judgments § 24 (1982) ("When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.").

XL Sports' constructive trust claim stems from the same transaction as its other claims, which have already been litigated in federal court. The federal court had already accepted pendent jurisdiction of XL Sports' other common law claims grounded in state law. *Compare Massengill v. Scott*, 738 S.W.2d 629, 630–31 (Tenn. 1987) (holding that the doctrine of res judicata did not bar a cause of action filed in state court following a federal lawsuit because the federal court declined to exercise its pendent jurisdiction over the plaintiff's tort claims grounded in state law), *with Penn-America Ins. Co. v. Crittenden*, 984 S.W.2d 231, 233 (Tenn. Ct. App. 1998) ("Implicit in the holdings of both the District Court and the Sixth Circuit Court of Appeals, is the fact that this claim could have been litigated in that action if it had been timely pled."). Thus, XL Sports could have sought the imposition of a constructive trust as another theory of recovery stemming from the same injury XL Sports sued upon in federal court.

Moreover, XL Sports does not dispute that, in order to impose a constructive trust on the proceeds held by Lawler, it must necessarily rely on the same facts previously litigated in the case filed in federal court. As such, we are cognizant of the following:

> Whether the first and second cause of action or claim are the same depends on whether the issues, facts, [or] evidence . . . essential to maintenance of the two actions are the same. Claims are not the same for purposes of claim preclusion where the two causes of action rest on different facts, and evidence of a different kind or character is necessary to sustain them.

50 C.J.S. *Judgments* § 749 (1997). "The best and perhaps most invariable test as to whether a former judgment is a bar is to inquire whether the same evidence will sustain both the present and the former action." *Gulf Am. Fire & Cas. Co.*, 209 So. 2d 212, 216 (Ala. 1968); *see also Bernard v. Sumner Reg'l Health Sys.*, No. M2002-02962-COA-R3-CV, 2003 Tenn. App. LEXIS 898, at *9–11 (Tenn. Ct. App. Dec. 22, 2003) (stating that "[w]e find it obvious that both lawsuits stem from the same set of facts" and concluding that the plaintiff's subsequent claim was barred by the doctrine of res judicata).

In order to impose a constructive trust in a case of this nature, a trial court must necessarily find some wrongdoing on the part of the trustee. *See Sanders v. Forcum-Lannom, Inc.*, 475 S.W.2d 172, 174 (Tenn. 1972) (setting forth the conduct which will warrant the imposition of a constructive trust); 90 C.J.S. *Trusts* § 176 (2002) ("In order that fraud or other wrongdoing may give rise to a constructive trust, it must exist at the inception of title to the property, or inhere in the transaction by which the trustee acquires the title, and fraudulent acts or omissions subsequent to the acquisition of title and not connected therewith do not give rise to a constructive trust."). As one commentator has stated:

> Where money is taken from the owner *by a conscious wrongdoer* the owner may enforce either a constructive trust or an equitable lien on the fund. Typically such remedies are invoked against fiduciaries who have embezzled or otherwise misappropriated funds, or against persons who have obtained money *by fraud* or duress.

Dan B. Dobbs, *Law of Remedies* §5.16, at 423 (1973) (emphasis added).

In the original suit, XL Sports, in addition to its causes of action alleging a violation of a federal racketeering statutes, asserted that Lawler obtained the funds at issue by fraud and/or conversion. The federal jury exonerated Lawler of any wrongdoing surrounding the transaction at issue. In fact, the federal court of appeals noted that "XL and Lawler were both parties to a lawsuit based on the facts at issue here, which lawsuit ended with a final judgment reflecting a finding by the jury that Lawler *had not wrongfully exercised dominion over XL's property in denial of XL's rights.*" *XL Sports, Ltd.*, 2002 U.S. App. LEXIS 21168, at *27 (emphasis added). Therefore, the facts which would give rise to the imposition of a constructive trust are the same facts which have already been litigated in federal court.

Furthermore, even if XL Sports were entitled to assert a new cause of action against Lawler in the chancery court, a related doctrine would prevent the parties from re-litigating the facts necessary to proving the need for a constructive trust. "Under the doctrine of collateral estoppel, when an issue has been actually and necessarily determined in a former action between the parties, that determination is conclusive upon them in subsequent litigation." *King v. Brooks*, 562 S.W.2d 422, 424 (Tenn. 1978). In *Sutton v. Smith*, No. 22, 1984 Tenn. App. LEXIS 2872, at *2 (Tenn. Ct. App. May 15, 1984), an unmarried couple acquired real property titled in both of their names. The female filed an action against the male to partition the property. *Id.* The trial court ruled in favor of the female regarding ownership of the real property. *Id.* The male subsequently sought to impose a constructive trust on the female's interest in the real property. *Id.* at *1. In the original order adjudicating the female's complaint, the trial court found that the male "failed to prove to the satisfaction of this Court that the plaintiff committed a fraud or under any other theory of law should not be a tenant in common was to the interest involved in the property . . . ." *Id.* at *3. On appeal to this Court, we held that, since the trial court already concluded that the female did not engage in

fraud, the male was collaterally estopped from attempting to re-litigate that issue and impair rights already established by a prior judgment. *Id.* at \*4.

To be sure, the jury in the federal lawsuit has already determined that Lawler did not engage in fraud or any other wrongdoing in acquiring the funds presently in his possession. Therefore, a holding that Lawler engaged in conduct warranting the imposition of a constructive trust would necessarily result in a finding contrary to the jury's verdict. This we decline to do. *See* 50 C.J.S. *Judgments* § 749 (1997) (noting that, in determining whether a subsequent action is barred, the court's may consider "whether the rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action"). Accordingly, even if we were to determine that XL Sports' constructive trust cause of action was not barred by the doctrine of res judicata, the doctrine of collateral estoppel would preclude XL Sports from establishing an essential element of its claim (i.e., that Lawler engaged in wrongful conduct).

In holding that, since XL Sports filed its claim for a constructive trust as a debtor in possession, the constructive trust claim was barred by the doctrine of res judicata, the federal court of appeals stated as follows:

> In the prior Cleveland case, XL asserted several common law causes of action against Lawler, including fraud and conversion, but did not mention its claim under *Gindt*. The jury exonerated Lawler. The entry of judgment on the jury's verdict precludes XL from now going after Lawler on the theory underlying the adversary proceeding, that theory being one that could have been asserted in a prior suit between the same parties in which there is now a final judgment on the merits.

*XL Sports, Ltd. v. Lawler*, No. 01-5363, 2002 U.S. App. LEXIS 21168, at \*30 (6th Cir. Oct. 8, 2002). We hold that XL Sports is now precluded from seeking to impose a constructive trust against Lawler in its capacity as a business entity for the same reasons the federal court of appeals refused to allow XL Sports to proceed with its claim as a debtor in possession.

## IV.
### CONCLUSION

As this Court has previously stated,

> [t]his Court cannot accept the argument of [Appellee] that, by disclaiming or failing to present a particular fact or theory supporting his action, a plaintiff may thereby reserve and preserve the disclaimed and unpresented fact or theory as an 'ace in the hole' to be used as a ground for a second lawsuit based on such ground. To assent to [the Appellee's] insistence would be to condone piecemeal presentation

-15-

> of suits and defenses at the whim of the parties.  Such is not the
> policy of our law and is contrary to the authorities set out above.

***Bernard v. Sumner Reg'l Health Sys.***, No. M2002-02962-COA-R3-CV, 2003 Tenn. App. LEXIS 898, at *9 (Tenn. Ct. App. Dec. 22, 2003).  Although the underlying facts are not in dispute, the chancery court erred as a matter of law in granting summary judgment to the Appellee in this case, therefore, we reverse that ruling.  Instead, we hold that the Appellee's present claim is barred by the doctrines of res judicata and collateral estoppel, therefore, we dismiss the case in its entirety.  Costs of this appeal are to be taxed to the Appellee, XL Sports, Ltd., for which execution may issue if necessary.

 

 

 

_____
ALAN E. HIGHERS, JUDGE